ATHEY, &c.
vs
KNOTTS, &c.

---

CHANCERY.

## Athey, &c. vs Knotts, on appeal, and Knotts vs Athey, &c. on error.

Case 8.

ERROR TO THE LOUISVILLE CHANCERY COURT.

*Femes covert. Maintenance. Equitable interest, &c.*

Sept. 20.

JUDGE BRECK delivered the opinion of the Court.

Case stated.

KNOTTS having obtained two judgments at law, one against Elisha Athey and John W. Athey, and the other against Elisha Athey alone, upon which executions had been returned, no property found, exhibited this bill in chancery against said Atheys, Nancy Athey, M. F. Athey, Lee Athey, Lawrence Young and Robert Glass, executors of Lee White, deceased, and said Young as administrator of William White, deceased, setting up said judgments and alledging that said Lee White, deceased, had devised to the defendant, Lee Athey, an infant son of said Elisha Athey, twenty acres of land near the city of Louisville, and that after said Elisha had become insolvent, he had expended, of his own means, not less than $1,500, in the erection of lasting and valuable improvements upon said twenty acres of land, of which he

was in the possession and enjoyment, free from rent or
other charge; that the said Elisha, by thus investing his
funds, was endeavoring to cover and conceal his effects
and property from his creditors.

The complainant further alledges that said Lee White
had devised to the defendant, Nancy Athey, the wife of
said Elisha, and her four children, of whom the said John
W. Athey was one, three thousand dollars; that the es-
tate of said testator was ample for the payment of said
legacies, and that a suit was then pending between the
executors and devisees, for the settlement thereof, and
which the complainant referred to as an exhibit.

The complainant also alledges that said Elisha, in
right of his wife, was also entitled to a large sum in the
hands of the defendant, Young, as the administrator of
William White, deceased, the father of the defendant,
Nancy.

That the defendant, Mortimer F. Athey, had in his
hands $300, which he had received from said Elisha, or
Nancy, or some person for them, but which belonged to
said Elisha.

The complainant sought to attach the funds alledged to
be in the hands of the defendants, M. F. Athey, and the
said Young and Glass, belonging to the defendant, Eli-
sha, or to him and his wife, the said Nancy. He prays
that his judgments may be satisfied out of said funds, but
if insufficient, that the improvements made upon said
twenty acre lot, by said Elisha, may be subjected to the
payment thereof.

The defendant, Lee Athey, by his guardian *ad litem*,
demurred to the complainant's bill, so far as any relief
was sought thereby affecting his rights or interest, and
the Chancellor sustained the demurrer.

M. F. Athey answered, denying that he had in his
hands or under his control, any money or property be-
longing to his father; that he had received from his
mother $300, which she had obtained as her portion as
one of the heirs of her father, of the proceeds of the sale
of a tract of land in the State of Indiana; that a portion
of the sum so received, had been expended by him in

furnishing necessary supplies for the support of his mother and the family.

The defendant, Nancy Athey, answered that she and her husband are both old and infirm, and the latter hopelessly insolvent; that nothing, as she believed, was coming to her from the estate of Lee White, her husband having received the whole amount before his failure. But if any thing was still due, she asks that it may be secured to her, and not taken for the payment of the complainant's judgments.

As to the $300 which she had loaned to her son, M. F. Athey, she claims it as her portion of a tract of land belonging to her father's estate. She admits that since the exhibition of complainant's bill, a balance due her from her father's estate, has been secured to her separate use, and that nothing is now due her from that source.

None of the other defendants named answered.

The Chancellor decreed that M. F. Athey pay the complainant one hundred and fifty dollars, which when paid, would be in discharge of so much of the debt due by him to Elisha Athey, and that said M. F. Athey, Elisha, and John W. Athey pay the complainant his costs.

From that decree M. F. Athey and Nancy Athey have appealed to this Court, and Knotts prosecutes a writ of error.

Whether the Chancellor was right in decreeing the payment by M. F. Athey to the complainant, is the only question presented upon the appeal.

There is no evidence of any indebtedness on the part of M. F. Athey to his father, or that he had in his possession or under his control, any property or effects belonging to him, apart from the $300 which Mortimer had borrowed from his mother. In regard to that fund, these appear to be the facts: a tract of land in the State of Indiana, belonging to the heirs of William White, deceased, was sold under a decree of a Court in that State—of the proceeds of the sale Mrs. Athey, as one of the children and heirs of William White, was entitled to about three hundred dollars. The attorney employed by the heirs to procure the sale, received Mrs. Athey's portion and paid it for her to her son M. F. Athey, who held it for

his mother and disbursed it, or a considerable portion of it, for her support and the support of the family. Whether Thomasson, the attorney, acted as the attorney or agent of Elisha Athey, in effecting the sale, or in the receipt of Mrs. Athey's portion, does not appear. He says he received it for her, and paid it for her to her son. Elisha Athey was, at the time, without means and hopelessly insolvent. It is not shown that he ever claimed the fund or exercised any control over it in any way whatever. The son was engaged in trade in a small way, and was faithfully employing the small amount thus received from or for his mother, with a view to her support. Under such circumstances ought a Chancellor to wrest it from his hands and appropriate it to the debts of the husband?

We think not, unless constrained by positive and inflexible rules of law, and we are not satisfied that he would be under any such constraint.

It is not, in our opinion, matter of condemnation or regret, that Courts of Equity in this country, are manifesting an increased disposition more effectually to protect and secure the rights of married women. The legislation of Kentucky upon the subject, furnishes ample and gratifying testimony that the policy and justice of such protection are sanctioned by public opinion. But in regard to the case under consideration, we are not prepared to admit that the refusal of the Chancellor to sieze upon the funds in question for the benefit of the complainant, would be a recognition of any new or additional right in the wife. While under the control of the Court, which directed a sale of the land, the fund was clearly beyond the reach of either the husband or his creditors, until suitable provision was made for the wife. In *Bennett and ux.* vs *Dillingham*, (2 *Dana*, 436,) the fund was the proceeds of slaves, in which the wife, as an heir or distributee, had an interest, and was in the hands of the Commissioner, who, under the decree of the Court, had made the sale. The Court held it subject to the equity of the wife to a settlement, and the doctrine is now well settled, that a Court of Equity will not lend its aid to the husband or his creditors, to reach the estate of the wife, until competent provision is made for her; and that as to

*After the husband became insolvent the attorney for the wife received a fund, the property of the wife, and by her direction paid it to her son—Held that it was not liable in his hands to be appropriated by the Chancellor to pay the debts of the husband without suitably providing for the wife.*

*Courts of Chancery will not lend their aid to subject estate descended to the wife to the payment of the debts of the husband, until the wife be provided for by a suitable maintenance, nor permit the husband to obtain the possession of personal property descended unless such provision be made.*

ATHEY, &c.
vs
KNOTTS, &c.

the personal estate of the wife, she is entitled to a provi-
sion before the husband shall actually have obtained the
possession of it.   In *Kenny* vs *Udall*, (5 *Johnson's Chy.
Rep.* 473,) and which is referred to in *Bennett* vs *Dilling-
ham, supra*, Chancellor Kent says, "It is now under-
stood to be settled, that the wife's equity attaches upon
her personal property, when it is subject to the jurisdic-
tion of the Court and is the object of the suit, (in chan-
cery,) in whosesoever hands it may have come, or in
whatever manner it may have been transferred."   In re-
ference to this doctrine this Court say, in the case cited in
Dana, "How far this doctrine may, under all circumstan-
ces, be correct, when applied to the *bona fide assignee* of
the wife's chattels or choses in action, we shall not now
decide or stop to enquire, for we have no doubt that, in
its application to the husband, or to his creditors, sueing
in equity, it is unexceptionable, whether the husband's
interest in the wife's personalty be equitable or legal, in
virtual possession or in action."

By what order of the Court the portion of Mrs. Athey
came into the hands of Thomasson, the attorney, does not
appear,   His testimony is, that there was no order to pay
it over to Elisha Athey ; that he received it as the portion
of Mrs. Athey, as one of the heirs, and paid it to her son
as such, who received and held it as his mother's, and
she claims it as her own.   Her husband has never had it
in his *actual* possession; he has not controlled nor claim-
ed it.   The fund still, we think, retains its identity as the
portion of the wife, arising from the sale of her interest
in the land of her father.   There has been no such con-
version of it by the husband; he has not so reduced it to
his possession as to destroy the equity of his wife.

We find in the record what purports to be the copy of
an answer of Elisha Athey and wife, to a bill in chancery
in the Louisville Chancery Court, in which they acknowl-
edge to have received $357, the "one ninth part of the
whole purchase money for the lands sold in Indiana, as
set forth in the bill."   But we are not informed as to the
contents of the bill or the object of the suit, when the
answer was filed, which is not sworn to, or whether the
lands referred to are the same, from the sale of which

Mrs. Athey became entitled to the $300 in contest. The document is too vague and indefinite to affect her rights in this case.

It appears that Elisha Athey was about sixty years of age and utterly insolvent, and that no adequate provision had been made for the support of his wife.

In view of the whole case, therefore, we come to the conclusion that the $300 in the hands of M. F. Athey, or the portion of it still remaining, ought not to have been disturbed, and that the decree is erroneous in directing him to pay $150 to the complainant.

Upon the writ of error, the first question for consideration arises upon the demurrer of the defendant, Lee Athey. This question is one of rare occurrence and much difficulty, and in the disposition of which very little aid is to be derived from judicial decisions. An insolvent father, instead of paying his just debts, expends a large sum in the erection of valuable buildings upon the lot or land of his infant son. Can he in this way, provide for himself and enrich his son, at the expense of his creditors? We think not. We are not prepared to admit that a Court of Equity is powerless in such a case, to afford any relief.

An insolvent father appropriated money in the improvement of a lot of his infant son, with the view to its enjoyment during his minority. On bill filed by the creditors of the father—Held that the Chancellor had the power to rent the property and appropriate a portion of the rent equal to the value of the improvements, compared to the value of lot and improvements, to the payment of the creditors of the father.

Under our statute Courts of Chancery have jurisdiction to subject "choses in action and any equitable or legal interest in any estate, real, personal, or mixed, which the debtor may be entitled to." The allegation in the complainant's bill, is that the improvements made are lasting and valuable, and the fair presumption is, that the property of the son is thereby rendered more productive. They have not been made by a trespasser, but by the natural guardian of the infant, who has a right, in the absence of a statutory guardian, to control and manage his estate, and, to the extent that it has been rendered more productive by the improvements, to enjoy the benefit thereof, at least during his son's minority, and which it is alledged he is now enjoying. Assuming then, that Elisha Athey, by reason of the improvements which he has made, is entitled to a portion of the rent, it seems to us that the Chancellor has power to reach such interest and apply it to the discharge of the complainant's judg-

ments. We have a right to presume that the improvements have been made with a view, and that they will permanently enhance the value of the son's estate, independent of the immediate enjoyment and benefit therefrom, contemplated by the father. When the son arrives at age, it may be proper to rule him to an election to pay such sum as the improvements may, at that time, add to the value of the estate, or surrender such portion of the annual rent as may be equitable, taking into consideration the increased value thereof, by reason of the improvements, or that they, the improvements, should be removed. How far he should be tolerated in a capricious election for the removal of the improvements, when obviously for his interest as well as the creditors, that they should remain upon equitable terms, need not now be decided. We are not satisfied that the Chancellor should not exercise a controling discretion in that respect. In *Graham & Butler* vs *Chatoque Bank*, (5 *B. Monroe*, 45,) this Court decide that if a ward, upon arriving at age, should elect to enter upon a lot before the expiration of a lease thereon, made by the guardian, and beneficially to the ward, he should be held responsible for a fair remuneration for improvements which had been made by the lessee, under and as part of the contract with the guardian. So in this case should the son elect to enter upon arriving at age, the Chancellor, under all the circumstances, may require him to do what may be equitable in regard to the improvements. Until that period, we are of opinion the complainant is entitled to an equitable portion of the rent, to be applied in discharge of his claim. That the Chancellor should direct such facts to be ascertained and reported, as will enable him to determine to what extent the rent should be so applied. We think the Chancellor has power to direct the premises to be rented out and to retain the case, if necessary, until Lee Athcy arrives at age, and longer, if the equity of the case should require.

The plaintiff in error further insists, that the Chancellor erred in not decreeing him relief out of the funds alledged to be in the hands of the executors of Lee White, and the administrator of William White, belonging to Elisha Athey in right of his wife, and to John W. Athey.

The complainant failed to show himself entitled to reach any fund in the hands of said executors or administrator, to which Elisha Athey had any claim in right of his wife. The equity of the wife attaches upon that fund, and even if it should amount to the sum alledged, it would not exceed an adequate provision for her.

As to the legacy alledged to be due John W. Athey, the complainant does not expressly attach it, or seek that it may be applied to the payment of his demand.

But as reference is made to a pending suit for the settlement of the estate of Lee White, but which is not copied into this record, upon the return of the cause, the complainant should be permitted to file said record, and further to prepare his cause in regard to the defendant, John W. Athey.

Upon the whole, the decree is reversed upon the appeal and the cause remanded, with directions to dismiss the complainant's bill as to the appellants, Mortimer F. Athey and Nancy Athey.

It is also reversed upon the writ of error, and the cause remanded with directions to overrule the demurrer of the defendant, Lee Athey, and for further and appropriate proceedings, consistent with this opinion.

*Pirtle* for Athey: *Guthrie* for Knotts.