## Case No. 12,844.

### In re SIDLE.

[2 N. B. R. 220 (Quarto, 77).] [1]

District Court, S. D. Ohio. 1868.

BANKRUPTCY—PROVABLE DEBT — CONCEALMENT—FRAUDULENT DEBTS.

1. A judgment obtained on breach of promise to marry, is a debt provable in bankruptcy, and is barred by discharge.

[Cited in Re Sheehan, Case No. 12,737.]

[Cited in Hun v. Cary, 82 N. Y. 80.]

---

[1] [Reprinted by permission.]

2. Concealment to oppose discharge of bankrupt must be wilful.

3. A fraudulent debt must be one made with a view to give a preference. Payment of attorney's fees is not such a preference as will prevent discharge of bankrupt.

[Cited in Re Seeley, Case No. 12,628; Re Boynton, 10 Fed. 279.]

By GILBERT B. MUNSON, Register:

I, Gilbert D. Munson, one of the registers in said court of bankruptcy, do hereby certify that, in the course of the proceedings of said cause before me, the following questions arose, pertinent to said proceedings, and were stated and agreed by counsel for the opposing parties, to wit: Hon. Lucien P. Marsh, who appeared for the bankrupt, and John O'Neill, Esq., who appeared for Sarah E. Tanner, creditor of said bankrupt. It appears from the evidence that in the year 1861, —— day of August, the bankrupt promised to marry said creditor, by means of which promise he gained her confidence and person to his purposes, &c. Upon this breach of promise to marry her, said creditor, in the May term, A. D. 1867, court of common pleas, Muskingum county, Ohio, obtained a judgment against said bankrupt for ten thousand dollars and costs, which amount has been proved against his estate in bankruptcy. This state of facts is admitted by counsel opposing. It was further shown, or sought to be shown by evidence, that said bankrupt promised to marry said creditor, intending, all the time of making said promise, not to keep the same, but making it as a means whereby he might gain the confidence and seduce the creditor. The question then arose whether or not the bankrupt can be discharged of a debt created by judgment for breach of promise to marry, and whether, under the peculiar circumstances sought to be established by the evidence, this debt was not created by fraud on the part of the bankrupt, to wit: the liability being for breach of said bankrupt's promise to marry, the promise being fraudulently made for the purpose of seducing creditor. The second question being whether or not the bankrupt concealed a part of his estate, to wit: he is a stout, healthy, unmarried man of twenty-seven years of age; lived and worked with his father, a farmer, all his life, except while in the military service, from 1862 to 1865, less than three years; further, that while in the service he drew no pay at less rate than the pay of a first sergeant. The third question being whether or not bankrupt has disposed of his property in view of his bankruptcy, so as to give preference to creditors, to wit: that shortly before he filed his petition in bankruptcy he owned a good horse, and he reports no creditor except Sarah E. Tanner. Specification in opposition to discharge, deposition of creditor and bankrupt, with proof of debt, and certified transcript of the case in court of common pleas, are hereto annexed, and made exhibits A, B, C, D and E.

OPINION OF REGISTER.—As to the first question, can a judgment for a breach of promise to marry be discharged under the act? it would seem undoubted, after a careful view of the authorities, that it can. It is a debt, and clearly comes within the provisions of the nineteenth section, eleventh and thirty-second sections of the bankrupt law. In case the debtor had been driven into bankruptcy, the woman could undoubtedly have proved her claim, and have obtained a dividend. If, then, it is a debt in this case, it is in the other. All debts that may be proved are barred by the discharge. To this general rule the statute makes some exceptions. In determining, then, whether or not a claim is barred by a discharge, it is only necessary to determine if it were provable, and is not included in any of the exceptional classes named in the statute. [14 Stat. 517] §§ 19, 33; Avery & H. Bankr. p. 234. Where a claim sounds in tort, as, for instance, for assault and battery, slander, &c., it is a claim for unliquidated damages, and could not be proved; this is true of any personal action, as for breach of promise to marry; but, in these cases, the judgment liquidates the damages, and at common law an action for debt could be brought on the judgment.

Parsons says: "A judgment may have the effect of making a claim provable, which of itself would not lie. If one brought his action for assault or slander, no damages for which would, as we have seen, be provable, and his action ripens to judgment before the insolvency, there is no more reason why he may not prove this judgment debt, than why he should not prove a promissory note for the same cause." 3 Pars. Cont. (5th Ed.) p. 516, also note "X." See Crouch v. Gridley, 6 Hill, 250; Thompson v. Hewitt, Id. 254; Graham v. Pierson, Id. 247; Luther v. Deyo, 19 Wend. 629; Hayden v. Palmer, 24 Wend. 364. The same view is maintained in Stone v. Boston & M. R. Co., 7 Gray, 539. It is there said "that an action for damages to the person is not property, nor the right of property, nor a debt, until it is reduced to a judgment, and then it passes, because it has assumed the form of a debt. The reason is, a claim for damages, when liquidated, must be liquidated in money, and a judgment for the money is to all intents and purposes a debt, or specialty." The same reasoning is applicable to an action for breach of promise to marry; the judgment, then, becoming a debt, is provable and discharged under the act. But allowing the consideration of this judgment to be inquired into, a far more troublesome question presents itself. Judge Blatchford (U. S. Dist. Ct. S. D. N. Y.) in Re Patterson [Case No. 10,817], seems to hold that a judgment may be inquired into. Parsons on Contracts (5th Ed. vol. 3, p. 515) might seem to lead to the same conclusion. It would seem very doubtful, whether upon principle, in such case as the one in question, this could be done. Parsons evidently means (Id.) that

this might be done to show there was in fact no debt, no claim; that the whole thing was bogus, and would not seem to conflict with the general doctrine, that a judgment wipes out, merges, as it were, the aforesaid qualities of a cause of action for tort, in the judgment. Still, as there is no opposition by counsel for the bankrupt, testimony has been introduced to show that at the time of making the promise of marriage, the bankrupt did not, in fact, intend to keep such promise, but only to seduce creditor. This point is sustained by the testimony of the creditor herself; but there is nothing to corroborate her statement in this; the fact is hardly established. Still, had it been fully established, in my opinion it is not such a fraud as is meant by the act to prevent a bankrupt's discharge. Supposing the testimony fully shows this state of facts, that he obtained the woman's person with the intention not to marry her, still I think this is not fraud. Suppose a man contracts to marry a woman, all the while in his innermost heart intending not to marry her, would that be fraud? Hardly, but rather a breach of contract. Suppose a man borrows money, intending not to pay it; is that fraud? Hardly, but rather a breach of contract. So that inquiry into the mere intention here, even if it shows conclusively an intent not to keep the contract, would not be fraud. Then, the woman ought not to have trusted the man. Matrimony is the only legal justification for yielding her person. The creditor is not without grave fault, though there may be many palliating circumstances, the "art of her seducer," &c. But it is certainly contrary to public policy to say that she is so innocent as that she had a right to rely upon his representations, and thus permit herself to be seduced; yet must this position be taken in order to make her case one of fraud. Moreover, the basis of the action for breach of promise is contract, and the seduction is only given in evidence in aggravation of damages. Where a party is charged with fraud in this case as well as the other cases, it is not enough to show his intention was fraudulent, but the other ingredients, such as reliance, and the like, must be present. Consequently, I think it is no fraud, and that this judgment debt may be proved and discharged under the act.

As a second ground for opposing the bankrupt's discharge, it is alleged that he has concealed a part of his estate. In support of which allegation it has been shown by the evidence that bankrupt is a stout, healthy, unmarried man, of twenty-seven years of age, lived and worked with his father, a farmer, all his life, except while in the military service from 1862 to 1865, less than three years; further, that while in the service, he drew no pay at a less rate than the pay of a first sergeant. But there has been no proof of concealment made. Concealment, as contemplated by the statute, must be wilful, not accidental, as a mere omission to disclose property. "It must be an act inconsistent with good faith on the part of the debtor." Atkins v. Spear, 8 Metc. [Mass.] 490; Robinson v. Wadsworth, Id. 67; Coates v. Blush, 1 Cush. 567; Rugely v. Robinson, 19 Ala. 404; Loud v. Pierce, 12 Shep. [25 Me.] 233. Concealment is not sufficiently established by the proof; and the intent to conceal, or defraud, seems to be entirely wanting.

As a third ground for opposing a bankrupt's discharge, it is alleged that he has disposed of his property in view of his bankruptcy, so as to give preference, to wit: That shortly before he filed his petition in bankruptcy, he owned a good horse, and he reports no creditor except the said Sarah E. Tanner. A fraudulent preference must be one made with a view to give preference. See sections 29 and 35 [14 Stat. 517]. It is strictly a statutory offence, and every ingredient required by the statute going to make up fraud must exist and be shown. If the preference was given in contemplation of becoming a bankrupt for the purpose of preferring, &c., there must be an intent to place the party on a better footing than other creditors. Avery & H. Bankr. 214. In the present case the quo animo seems to be entirely wanting; the contract to pay his attorneys fifty dollars each, and to fulfil which the horse was sold, was made by the bankrupt before the trial of the case for breach of promise, although payment was not made until after suit.

Payment of one's attorney is not a preference such as the law contemplates, by reason of public policy, which makes faith in matters of attorney's fees obligatory upon parties, for the better administration of justice in the courts, &c. Here the client was under the influence and power of his attorneys, whom he also employed to conduct his cause in the bankrupt court. I can not think that payment to them of their fees was such a preference as the law intends shall prevent a discharge. Respectfully submitted.

LEAVITT, District Judge. The opinion of the register is approved and affirmed.