WURTS, The JOHN. See Case No. 7,434.

WURTZ (JOY v.). See Case No. 7,555.

WYANDOT COUNTY (COLER v.). See Case No. 2,987.

WYANDOTTE CITY (EIDEMILLER v.). See Case No. 4,313.

---

## Case No. 18,106.

### In re WYATT.

[2 N. B. R. 288 (Quarto, 94); 1 Chi. Leg. News, 107.] [1]

District Court, D. Kentucky. 1868.

DISCHARGE OF BANKRUPT—OPPOSITION.

Where a specification in opposition to the discharge of a bankrupt is that the bankrupt has concealed his effects, or that he has sworn falsely in his affidavit annexed to his inventory of debts, it must be shown that the acts were intentional in order to preclude a discharge.

[Cited in Re Boynton, 10 Fed. 279; Re Warne, Id. 379.]

1 [Reprinted from 2 N. B. R. 288 (Quarto, 94), by permission. 1 Chi. Leg. News, 107, contains only a partial report.]

On an application for a discharge by the bankrupt [W. Wyatt], certain creditors, Morton, Galt & Co., bankers, opposed the same on two grounds, viz.: First. That he concealed an interest of three thousand dollars (which they allege he had in a lot of land and four cottages thereon), with the intent to defraud his creditors. Second. That he wilfully swore falsely in the affidavits annexed to his petition and schedules, in wilfully and intentionally omitting from the schedules of his estate the above-mentioned interest.

The following is substantially the evidence in the case: On the 2d of October, 1866, the bankrupt gave his wife four notes of one thousand dollars each, which he had received in part payment for his undertaking establishment on the corner of Seventh and Jefferson streets, Louisville. He had sold it to L. D. Pearson. Said notes were due respectively in one, two, three, and four years. In January following he took back two of these notes and gave them to George W. Morris as collateral security for the balance of the purchase-money then owing by the bankrupt to Morris. The wife of the bankrupt owns a lot of ground of one hundred and two feet front, the legal title of which has been held by her trustee for about eleven years. On this ground she erected four cottage houses. It does not distinctly appear whether they were built in the fall of 1866 or in the spring of 1867. The other two notes she used in the construction of these cottages. It does not appear at what exact time the notes were so used. The estate of the bankrupt, in October, 1866, amounted to twenty-four thousand five hundred dollars, over and above all his debts, which at that time amounted to about two thousand or two thousand five hundred dollars. The bankrupt was possessed of the above estate for six or eight months after the date of the gift to his wife. In July, 1867, the bankrupt, who was then in Memphis, sent his wife by express one thousand dollars. Of this she paid two hundred and fifty dollars for taxes and family expenses. It does not appear what became of the balance. The counsel for the creditors contended that the bankrupt was invested with an interest of three thousand dollars in his wife's property; that he failed to mention it, and that he concealed the same. By a statute of Kentucky "all conveyances, gifts, &c., made without valuable consideration, are void as to existing liabilities." Under this statute it has been held that it makes no difference how much the assets of the grantor may be in excess of his liabilities.

The counsel for the bankrupt contended that the bankrupt had no interest whatever in his wife's property, for these reasons: First. Whether the gift was fraudulent or not, or void or not, the gift as between Wyatt and his wife was conclusive, as to Wyatt, that he had no further interest, as he had conveyed it to his wife. Whether the creditors have, is another question. Second. Because a husband cannot encumber the separate estate of his wife, it having been decided in the case of Fetter v. Wilson, 12 B. Mon. 90, that a husband cannot even create a mechanic's lien on his wife's property. Third. That the gift was not, even under the statute of Kentucky, constructively fraudulent or void, as there is a difference between gifts under such circumstances made to strangers and those made where love and natural affection is the consideration (9 B. Mon. 514; 1 Metc. [Ky.] 351); and that, having no interest in his wife's property, it was impossible for him to conceal that which he did not have. If these positions and views of law were not correct, the bankrupt, who is a business man, could not have known that under the law he was vested with an interest in his wife's property; that whether he had an interest or not, was an abstruse and recondite question of law, which the bankrupt did not know and could not be expected to know; that, if it should be decided that he has an interest, he has merely failed to put it in his lists of assets, because he did not know he had it, by reason of his ignorance of the law; and that a mere omission to mention an interest is not made a good ground of opposition by the bankrupt act [of 1867 (14 Stat. 517)], and that such an omission is no concealment; that a concealment must be wilful, intentional, and deliberate, and that it was irrational to say that a man concealed that which he neither had nor knew he had.

J. G. Wilson and Wm. Mix, for Morton, Galt & Co.

P. A. Gaertner, for bankrupt.

BALLARD, District Judge. This case is now heard on specifications of grounds of opposition to the bankrupt's discharge. Two grounds of opposition are specified: First. That the bankrupt, knowing his interest to the extent of three thousand dollars in a lot and four cottage houses (particularly described), did conceal his aforesaid interest with intent to defraud his creditors. Second. That the bankrupt has wilfully sworn falsely in his affidavit annexed to his petition and schedules,. in that he has wilfully and intentionally omitted from the schedule of his estate an interest of three thousand dollars in and to four cottage houses erected on a lot of land (particularly described), whereof the legal title was held for his wife, &c.

The proof shows that the bankrupt, in the fall of 1866, or in the spring of 1867, allowed his wife to expend the proceeds of two notes belonging to him, each amounting to one thousand dollars, and perhaps other of his money, amounting to a few hundred dollars. in erecting four cottage houses on a lot of land, the legal title of which was in Wm. Hatzell, for her use. The bankrupt filed his original petition on the 6th of February,

1868, and in his schedules discloses debts amounting to between eight and ten thousand dollars, and assets of little or no value. The bankrupt did not, in his schedules, disclose his interest, if he has any, in said cottage houses; nor did he in any manner disclose the same until his examination, which took place on the 20th of April, 1868. It does not appear from the papers before me, at whose instance the examination took place, but, so far as the papers show, this examination gave the first information to the opposing creditors of the supposed interest of the bankrupt in the cottage houses mentioned.

The twenty-ninth section of the bankrupt act specifies all the grounds of opposition to a bankrupt discharge. Among other things it is therein provided that "no discharge shall be granted * * * if the bankrupt * * * has concealed any part of his estate or effects." The term "concealed" implies something wilful, intentional. One cannot be said to conceal property, unless he not only knows that he owns it, but unless he also intentionally, not inadvertently, conceals the same from his assignee or creditors. The failure of a bankrupt, though wilful, to disclose in his schedule all his property, is not by the bankrupt act made a specific ground for withholding his discharge. It is not therefore clear to me that should a bankrupt immediately on the election of his assignee disclose to him all the property owned by him at the time of the filing his petition, and promptly deliver to the assignee all the property belonging to him, he could be refused his discharge—if no other ground of opposition were specified than that he •had concealed his estate or effects, even although it should appear that he had wilfully omitted to disclose such property in his schedule annexed to his petition. This possibly might be regarded in law as a meditated concealment, though not an actual concealment. It is not necessary, however, to decide the question here suggested, and it is not decided. But whether the specification be that the bankrupt has concealed his effects or that he has wilfully sworn falsely in his affidavit annexed to his inventory, it is equally required that the act should be shown to be intentional to preclude a discharge.

The evidence in the case is exceedingly limited. It consists entirely of the statements made by the bankrupt in his examination, and of the deposition of L. D. Pearson and P. A. Gaertner. The latter deposition, I think, discloses nothing material, and that of Pearson only discloses that he gave the bankrupt, on the 2d or 3d of October, 1866, four notes of one thousand dollars each, payable in one, two, three, and four years from date; that he paid one of the notes to Geo. W. Morris; that Messrs. Henning & Speed, and A. D. Hunt hold two of the notes, and that one note is in suit. When the two notes were passed to Henning & Speed, and A. D. Hunt, does not appear, but it is probable, from the testimony of the bankrupt, that they were so assigned

between the 2d of October, 1866, and the following summer; and it appears from the same testimony that two of the notes were assigned to George W. Morris, in January, 1867. Pearson proves nothing that had not been already proven by the bankrupt himself.

As the grounds of opposition were not filed until after the bankrupt had disclosed in his examination all that is now known respecting his supposed interest in the cottage houses in question, it follows that the opposing creditors seek to convict the bankrupt of concealing his effects by his own disclosures. I am not sure that this may not be done, but it would seem that in such case it should appear that the disclosures were extorted from the bankrupt and not voluntarily made. I have already said it does not appear from the papers before me at whose instance the examination of the bankrupt took place, nor that it was ordered by either the district court or register. But the questions remain: Has the bankrupt any interest in the "cottage houses" which passed to his assignee? and if he has, did he conceal this interest within the meaning of the bankrupt act?

The money invested by the bankrupt in building the four cottage houses on his wife's land must undoubtedly be regarded as a gift by him to his wife. But every gift by a husband to his wife is not per se fraudulent. If the husband, free from debt or serious embarrassment, give to his wife a small portion of his estate, leaving an ample amount to pay all his debts and liabilities, such gift is not fraudulent; although it is, in this state, by virtue of a statute, void as to all debts existing at the time of the making of the gift. Whether the gift in this case was made in October, 1866, or in the spring of 1867, the bankrupt owed at the time some debts, though, if the gift was made in October, 1866, the debts then existing bore but a small proportion to the value of his whole estate. But whether the amount of the debts owing at the time of the gift was large or small, in proportion to the estate of the giver, the gift, as before stated, was, under the statute of this state, void as to existing debts. Whether such a gift, not fraudulent, but void as to existing debts, under the statute of Kentucky, would pass to an assignee in bankruptcy, is an interesting question; and assuming that it would pass, how the assignee should administer the proceeds, whether for the benefit of all the creditors of the bankrupt, or only of the creditors existing at the date of the gift, would be a still more difficult question. I am at some loss to know how either the assignee of the bankrupt can reduce to possession or in any manner subject the money which the bankrupt invested in improvements on his wife's lands, or how the value of the improvements so made, with the means of the bankrupt, can be made available to his creditors. And I think it plain, if it could not be so subjected or made available, there was no concealment in law, even

though the bankrupt intentionally omitted to mention the fact in his schedule or otherwise.

There can in law be no concealment except in respect to assets or effects liable to the bankrupt's creditors.

I do not mean to decide that the money of the bankrupt, or the value of it, invested in improvements on his wife's land, cannot by some process be subjected for the benefit of his creditors. But the learned counsel of the opposing creditors have not suggested any process by which it can be done; and if they have not and cannot suggest how it may be reached, surely the bankrupt, who is not learned in law, may be excused for being ignorant.

It may be that upon the authority of the case of Athey v. Knotts, 6 B. Mon. 29, to which case the court called the attention of counsel, during the argument, the cottage houses erected with the money of the bankrupt on his wife's land, may in some way be subjected by his assignee for the benefit of his creditors, if it should turn out that the money was so applied by the husband in either actual or constructive fraud of his creditors, or even without such fraud.

But I am not entirely satisfied with the authority of Athey v. Knotts; and the subsequent cases of Fetter v. Wilson, 12 B. Mon. 90, and Robinson v. Huffman, 15 B. Mon. 80, seriously shake, if they do not overrule it. I shall, however, not decide this question, until it shall be presented in a suit in which the cottage houses shall be sought to be subjected.

I mean to say only that it is so doubtful whether said houses can be subjected by the assignee, that the question of law involved is so nice and difficult, that the bankrupt is not to be convicted of concealment upon the single ground that he omitted to state in his schedules that the houses in question were built wholly or in part with his money. He may well be excused if neither the learned counsel nor the court can now positively say that the bankrupt has any interest in said houses which can be subjected or which could be the subject of concealment. It is therefore ordered that the discharge be granted.