### Case No. 8,439.

### In re LOCKE.

[1 Lowell, 293; [1] 2 N. B. R. 382 (Quarto, 123).]

District Court, D. Massachusetts. Dec., 1868.

BANKRUPTCY — ILLEGAL PREFERENCE — NOT CONTEMPLATING BANKRUPTCY—DISCHARGE—TRADER NO LONGER IN BUSINESS.

1. It seems, that under the bankrupt act [of 1867 (14 Stat. 517)] an insolvent debtor may make an illegal preference though he does not contemplate bankruptcy. The question is of intent to give one creditor an advantage over the others. This is a question of fact which is not conclusively decided by showing a known insolvency, though it may be inferred from such insolvency in the absence of controlling evidence.

[Cited in Re Silverman, Case No. 12,855; Baldwin v. Wilder, Id. 806; Re Seeley, Id. 12,628.]

2. A fraudulent preference which will prevent a discharge of the bankrupt, under section 29, is defined in that section and in section 35, without reference to section 39.

[Cited in Re Warner, Case No. 17,177; Re Perry, Id. 10,999; Re Pierson, Id. 11,153; Re Carrier, 47 Fed. 444.]

3. One who had ceased to be a trader and had disposed of all his property many years before the bankrupt act was passed, but had not settled all his trade debts, and was living on his salary as a clerk, paid his rent and some other necessary expenses monthly, without intending to become bankrupt; *held*, that such payments were not fraudulent preferences within section 29, of which his trade creditors could take advantage in opposing his discharge, though made within four months before bankruptcy, and when the debtor knew he was insolvent.

[Cited in Re Burgess, Case No. 2,153; Re Wolfskill, Id. 17,930; Re Boynton, 10 Fed. 279.]

[The bankrupt [Worthington S. Locke,] has been fully examined, and his examination, which is not impeached or contradicted, tends to show that he was extensively engaged in trade, in several cities of the United States, down to the year 1856, when his business was concentrated at Portland, in Maine; and that in December, 1857, he failed. He settled with many of his creditors on such terms as he could offer and they could accept; but with some of them he made no settlement, for reasons not disclosed nor pertinent here. Since his failure he has from time to time earned money by service in the army and as a clerk, and has supported his family and made occasional payments on his old debts. No imputation is made upon his fairness, or that he has accumulated any property that he now holds concealed, or that he has committed any fraud in fact. Two of his creditors have proved their debts, and they oppose his discharge on the ground that he has made illegal preferences. One of these illegal preferences turns out to have been made before the passage of the bankrupt act; the other two are payments made from time to time, during four months before the filing of the petition, for rent, and for groceries furnished the bankrupt's family. The petitioner admits that he was insolvent when he made these payments and for ten years before, and knew it; but testifies, if the evidence is admissible, that he had no intention to prefer the persons to whom he made the payments, nor any contemplation of bankruptcy, when he made them. The case has been fully argued. On the part of the objecting creditors it is insisted that when a person subject to the bankrupt law is insolvent, and knows it, and pays one creditor in full, he necessarily prefers that creditor, and must be conclusively presumed to have intended the necessary consequences of his act, and that no evidence of actual intent can be admitted to control this inference. On the other side the contention is that the question of preference is one of fact, and is open to proof, like any other fact, including, of course, inferences from the acts and situation of the debtor.] [2]

J. D. Ball, for creditors.

J. S. Abbott, for bankrupt.

LOWELL, District Judge (after stating the facts as above). In its origin the doctrine of preference is a creation of the courts. The word is not found in the English statutes; but the courts soon discovered that many acts, legitimate at common law, would tend to defeat the equal and proper operation of the bankrupt laws, and declared such acts to be frauds on the statute. Thus the conveyance of the whole of a trader's property with a view to the payment or security of past debts, has always been held a fraud on the act, although there may have been no wrong intended. I had occasion to examine these decisions on a former occasion, and to show that they rest in principle on the doctrine of preference. The English courts hold that such a conveyance is conclusive evidence of insolvency, and ipso facto a fraud on the law. But they have taken an entirely different view of assignments of only a part of the property, and especially of payments made by a trader in the course of his business, or on suit brought, or even on demand made by the creditor; and the rule in those cases is, that a payment to be an act of bankruptcy must be voluntary, that is, without pressure or demand, and in

---

[1] [Reported by Hon. John Lowell. LL. D., District Judge, and here reprinted by permission.]

[2] [From 2 N. B. R. 382 (Quarto, 123).]

contemplation of bankruptcy; for they will not admit any inference of an intent to give an advantage to a creditor who is merely pursuing his own rights; nor that a debtor who really hopes to keep up his business, and goes on paying in that hope, can fairly be said to intend to prefer one, when he really intends to pay all. It is a question for the jury in each case whether the payment was made without a demand, and with the prohibited intent (Fidgeon v. Sharpe, 5 Taunt. 541; Morgan v. Brundrett, 5 Barn. & Adol. 289); though the court or jury may infer the intent from the insolvency of the trader (Ex parte Simpson, De Gex, 9).

Under the bankrupt act of 1841, the preferences declared void by the second section were such as were made by one who at the time contemplated becoming a bankrupt under the act. Buckingham v. McLean, 13 How. [54 U. S.] 150.

In our existing bankrupt law preferences are spoken of in three different sections, viz., 29, 35, and 39. The first-named section treats of the debtor's discharge, and what fraud or misconduct shall prevent or avoid it; the second, of frauds which the assignee may avoid; and the third, of acts of bankruptcy for which a warrant may issue on the petition of creditors.

It is argued that under section 39 neither contemplation of becoming a bankrupt under the act nor a voluntary payment need be shown to create a preference which shall be an act of bankruptcy, and that section 29 avoids a discharge for every thing which by section 39 is an act of bankruptcy. On the first point, I agree with the argument. The later statutes of Massachusetts, which our law appears to have followed very closely in this particular, have been construed to mean that the payment or conveyance need not be made in contemplation of becoming an insolvent under the act. Ex parte Jordan, 9 Metc. [Mass.] 292; Holbrook v. Jackson, 7 Cush. 136; Williams v. Coggeshall, 8 Cush. 377. And such is the true construction of the bankrupt act; for without it, the reference to insolvency as well as bankruptcy in sections thirty-five and thirty-nine would be without meaning. If, then, a debtor is insolvent, and knows himself to be so, and pays one creditor in full with intent to give him an advantage over the body of creditors, that is an act of bankruptcy. Nor does pressure by the creditor relieve the act of its character as a preference. The statute is silent on this; and in point of fact, such a proceeding has a no less injurious effect on the other creditors that it may have been solicited by the particular creditor; and so I have often ruled. See Denny v. Dana, 2 Cush. 160. But on the other hand, I am not prepared to say that the mere payment of a debt by a debtor who is insolvent and knows it, is always and necessarily an act of bankruptcy. Upon this point I give no opinion. Such a rule is open to the same objection with the one just considered, namely, that it substitutes an inflexible rule of law for an inference which is properly one of fact. That every person must be presumed to contemplate the necessary consequences of his act is true; but when we come to consequences that are only more or less probable, it is fit that the jury should say whether they were in the mind of the party or not. No doubt in the absence of controlling evidence they may decide by the act itself; but the intent to prefer must include, I think, the intent, or at least the fear, of stopping payment, which idea is not necessarily included in insolvency. Besides I am much inclined to think that section 29 does not, in this respect, adopt the provisions of section 39. The latter section is remedial, and should be construed broadly in favor of creditors; because its scope and purpose are to oblige insolvent traders to take advantage of the act, and thus to ensure an equal distribution of their estate under its carefully framed provisions. Accordingly, we find that many acts, which are innocent in themselves, are made grounds for a petition in invitum. Such are, lying in prison for seven days, allowing commercial paper to be dishonored, &c. All of these may, without impropriety, be called frauds on the bankrupt act. But section twenty-nine is intended for the benefit of honest and careful traders. It sternly prohibits both fraud and negligence. Not keeping proper books of account, wasting money by gaming, not keeping the estate for the assignee after the petition has been filed, and many other acts of omission and commission are grounds for withholding the certificate, though several of them are not acts of bankruptcy. But in dealing with preferences its language is peculiar. It first enacts that the discharge shall be refused if the debtor has given any fraudulent preference contrary to the provisions of the act; it then, in the same sentence defines a preference thus: "Or, if he has, in contemplation of becoming a bankrupt, made any pledge, payment, &c., for the purpose of preferring any creditor," &c. And finally, if he has been guilty of any fraud whatever contrary to the true intent of this act. Considering the intent of this section to repress fraud and negligence, and the full description of the various acts which may be relied on in bar of the certificate, I am not prepared to say that the general words refer to the merely technical frauds created by the thirty-ninth section. They may, no doubt, include all frauds in fact, whether specifically defined in any part of the statute or not, but hardly mere acts of bankruptcy as such.

I am further of opinion that the payments which this debtor made are not within any true definition of a fraudulent preference. It is very rarely that the payment of rent,[3] or

---

[3] I have ruled this in several cases.—Judge Lowell.

of a butcher's or grocer's bill, in the ordinary course of dealing. can be a preference, because the consideration is a continuing one. If the tenant does not pay his rent, he is ejected, and the main consideration is the forbearance; and so of the other like bills, though in a less degree. We have seen that a debtor cannot be said to intend a preference, unless he expects or fears either to stop payment or to become bankrupt. The evidence shows that this defendant did not contemplate bankruptcy. He had, indeed, years before stopped payment, and ceased to be a trader, and had disposed of his trade capital by what may or may not have been preference by the law of his domicile. But he had accumulated no new estate, and the payments which are now objected to were for his current expenses, and made out of his current earnings, though they were made monthly and not day by day. If these were technical preferences under section 39, which I doubt in the case of one not a trader, and not paying one trade creditor before another, yet I cannot believe they were fraudulent preferences within section 29, which should bar his discharge. Discharge granted.