F. Henry & Co. *v.* B. T. Bennett and Wife.

**Improvement of Wife's Real Estate—Fraud of Creditors.**
An insolvent debtor may not take funds due his creditors and improve his wife's real estate.

**Fraud on Creditors—Wife's Participation.**
Where the wife knows of the insolvency of her husband and knows he is using money due his creditors to improve her real estate, she is held to have participated in the fraud; and while she cannot be deprived of her title secured before insolvency, the court will cause the rents of such property to be applied upon creditors' claims.

APPEAL FROM CAMPBELL CIRCUIT COURT.

September 18, 1874.

Opinion by Judge Cofer:

The lots in the contest were purchased in 1864, and paid for long before the creation of the appellants' debt, and at a time when B. T. Bennett was apparently in prosperous financial conditions; and there is, therefore, no reason for imputing a fraudulent intention on his part in causing the title to be conveyed to his wife. The improvements put upon the lot fronting on Putnam street, were erected in 1867, also prior to the creation of appellants' debt, and when the circumstances of Bennett may have justified such expenditure for the improvement of his wife's property.

But the house on the lot fronting on York street was erected after the creation of the appellants' debt, and at a time when both husband and wife must have known that the former was insolvent. He had just mortgaged the Monmouth street property to McIntosh for over $8,000, and the property of the firm of which B. T. Bennett

was the only responsible member, was sold under legal process for debt, either before the commencement of the house on York street, or while it was in course of erection. This house and other improvements put on the lot, cost probably not less than $5,000. B. T. Bennett was, at the time this was done, hopelessly insolvent. He had, from 1864 to 1870, secured to his wife the title to real estate which, with its improvements, was worth, as he himself proves, at least $10,000. Can a husband thus enrich his wife at the expense of creditors? We think not. Nor can he get his effects beyond the reach of the chancellor by such shifts as that attempted in this case.

The house on York street was built, not only with the consent of Mrs. Bennett, but at her urgent solicitation. She knew her husband was insolvent, and that in equity and good conscience the money expended on the house ought to have been used to pay debts, and she must, therefore, be held to have participated in the fraud intended by her husband. But she cannot, on that account, be deprived of the title acquired in 1864, to the lot, but the court can and will take the property which she is now renting, and cause it to be rented out to pay the appellants' debt. *Athey, et al., v. Knotts,* 6 B. Mon. 24; *Robinson v. Huffman and Wife,* 15 B. Mon. 65; *Shackleford, Assignee, et al., v. Collier, et al.,* 6 Bush 149.

But it is insisted for Mrs. Bennett that she refused to sign the mortgage on the Monmouth street property, unless her husband would agree to build the house on the York street property, and that he did agree to do so in consideration of the release of her potential right of dower. We are not satisfied that any such agreement was made, but if made, it would weaken, rather than strengthen, her case. The debt for which the mortgage was given was less than $9,000; and a demand by the wife, and agreement by the husband, to build for the wife a house worth $5,000, in consideration that she would release her dower in property mortgaged for $9,000, is itself strong evidence of a fraudulent combination between them to cheat creditors.

The judgment dismissing appellants' petition is *reversed,* and the cause is remanded with directions to cause the lot fronting on York street and its improvements, to be rented out until a sum sufficient to satisfy the appellants' debt, interest and costs is realized.

*Hawkins, Boden, for appellants.*
*Benton, Jones, Hornshell, for appellees.*