## In re JESSE BOYNTON.

## In re LYMAN BOYNTON.

## In re BOYNTON BROTHERS.

*(District Court, D. Rhode Island.* February 7, 1882.*)*

1. BANKRUPTCY—RESIDENT ALIENS.
    Resident aliens may take the benefit of the bankrupt act.
2. SAME—INSUFFICIENT GROUNDS FOR WITHHOLDING DISCHARGE.
    Omissions from the schedule or inventory which were unintentional, the result of an oversight or mistake, and not wilful, should not bar a discharge.
3. SAME—PAYMENTS THROUGH INADVERTENCE.
    Payments made to employes several days before filing the petition, through inadvertence or a mistaken sense of duty, should not deprive bankrupts of their discharge. So payment of attorneys' fees is not such a preference as will prevent a discharge.

**4. SAME—CONVEYANCES IN ABSENCE OF CONCEALMENT.**

Conveyances of stocks made by bankrupt to his wife, long before bankruptcy, and in the absence of concealment, are no ground for withholding a discharge.

**5. SAME—VIOLATION OF PROVISIONS OF BANKRUPT ACT—EVIDENCE.**

Where the estate of the bankrupts yields a large percentage of the indebtedness, and where the only evidence adduced by the opposing creditors is the examination of the bankrupts before the register, the court should be clearly satisfied, upon the proof submitted, of the violation of the bankrupt act before withholding a discharge.

In Bankruptcy.

*N. B. Bryant,* for creditors.

*James M. Ripley,* for bankrupts.

COLT, D. J. In this case specifications are filed by sundry objecting creditors against the discharge of the bankrupts. It appears that the individual estate of Jesse Boynton paid 91 per cent.; that no debts were proved against the individual estate of Lyman Boynton; and that the firm of Boynton Bros., composed of Jesse and Lyman, paid 81 per cent. While the specifications in terms oppose the discharge of both brothers, yet we learn from the statement of counsel that the objecting creditors desire mainly to resist the discharge of Jesse Boynton.

The first specification, that the bankrupts are not citizens of the United States, and so not entitled to the benefit of the bankrupt act, is not pressed, in view, probably, of the fact that they have resided in this country for more than 25 years, and that resident aliens may take the benefit of the act.

The second specification charges wilful false swearing in the affidavit annexed to the schedule or inventory, in that a certain farm in Canada, and certain real estate in Boston, were knowingly omitted therefrom. The evidence of Jesse Boynton discloses that he and his brother had conveyed to them many years before a farm in Canada of some 75 acres, which he thinks might sell for $1,000. He states that he had not thought of this property for years; and when questioned further as to whether the farm had not been within a few years on his books, in the form of assets, at a valuation of $2,600, he answers that he does not know; that he never ordered it put there, and if there, representing such an amount, it was the sum paid for it. In the absence of any testimony impeaching this statement, and believing that the court should not hastily presume fraud merely from the fact of such an omission, in a case where the payment of so large a percentage of indebtedness tends to show general good faith, we cannot but conclude that this omission was unintentional—an over-

sight or mistake—not a wilful act; therefore it should not bar a discharge. *In re Wyatt*, 2 N. B. R. 288; *In re Smith*, 13 N. B. R. 256; *In re McVey*, 2 N. B. R. 257.

The evidence does not support any omission from the inventory of real estate in Boston. The latter part of this specification charges the omission of certain lands, stocks, and money of great value, but this general allegation is not established by proof.

The third specification alleges fraudulent preferences in paying sundry creditors a few days before bankruptcy, when insolvent and in contemplation of bankruptcy, and among others J. C. Boynton, a son of one of the bankrupts. From the examination of the bankrupts before the register we find that $604 was paid as wages to workmen several days before the filing of the petition, the sum of $60 in three different amounts at different times to J. C. Boynton for services, the sum of $300 to their counsel, Thurston, Ripley & Co., and $90 to the clerk of the court. Some of these payments certainly were proper and regular, and so far as any of them may have been improper, there is nothing to show that they were made with any fraudulent intent, but rather through inadvertence or a mistaken sense of duty; consequently the bankrupts should not be deprived of their discharge. *In re Rosenfeld*, 2 N. B. R. 117; *In re Sidie*, 2 N. B. R. 220; *In re Locke*, 1 Low. 293; *In re Burgess*, 3 N. B. R. 196.

Payment of attorneys' fees is not such a preference as will prevent a discharge. *In re Sidle*, 2 N. B. R. 221; *In re Rosenfeld*, 2 N. B. R. 116.

The fourth specification, that each of the bankrupts wilfully swore falsely in omitting large sums of money from their schedules, is another general allegation unsupported by proof.

The fifth and last specification contains another charge of similar character against Jesse Boynton in omitting from his inventory $5,000 withdrawn from the firm; also other property, comprising sundry shares of different stocks specifically mentioned; also horses and carriages.

Boynton admits that he drew from the firm from $10,000 to $12,-000 during the year 1878, and prior to September 1st, for current family expenses. This may seem a large sum, but the testimony is that he did not expect to go into bankruptcy until within 10 days of the filing of the petition, August 31, 1878, and no proof is offered to show that the money was not actually spent as stated, or to establish fraud or concealment in any form. *In re Rosenfeld*, 2 N. B. R. 116. It also appears that certain shares of stock were transferred to his

wife five or six years before bankruptcy, and that he has borrowed money, giving the stock as collateral security. He swears that the transfers were made *bona fide*, and no proof is brought forward to contradict him. Such conveyances, made long before bankruptcy, and in the absence of concealment, are no ground for withholding a discharge. *In re Murdock*, 3 N. B. R. 146; 1 Low. 362.

There seems to have been nothing irregular in the sale of the other stocks mentioned, or in the disposition of the proceeds. The ownership of any horses is denied, but the bankrupt admits having an old carriage or two in the stable. This latter omission is hardly of such a serious character as to affect the discharge. Had these bankrupts intended to have defrauded their creditors it is more than probable that their estate would have yielded a smaller percentage of their indebtedness, and when in addition to this we find that the only evidence brought forward by the opposing creditors is the examination of the bankrupts before the register, and that no witness is produced to show any facts tending to contradict them. The court should be clearly satisfied, upon the proof submitted, of the violation of the provisions of the bankrupt act set out in the specifications before withholding a discharge. *In re Burgess*, 3 N. B. R. 196.

We are not so satisfied, and therefore a discharge is granted in each case.