*Herndon* for plaintiff; *Caperton* for defendant.

---

Mill Case.

## McDougle *vs* Clark.

Case 117.                APPEAL FROM THE CHRISTIAN COUNTY COURT.

*Mills.*

July 26.          CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

Case stated.

This appeal brings up an order of the County Court of
Christian county, granting to Isaac Clark the privilege of
erecting a mill and dam on the west fork of Red river,
upon his paying ten dollars, the value of an acre of ground,
the property of McDougle, condemned by the inquest;
and also $7 50 assessed by the inquest as damages to be
occasioned by the overflowing of three-fourths of an acre
of McDougle's land.

Grounds of op-
position to the
erection of a mill
dam.

The grant of this privilege is opposed by McDougle on
two principal grounds: 1st. That the proposed dam will
entirely destroy a spring on the margin of the creek, a
few yards only above it, the use of which he claims to be
important to the occupants of his adjacent farm; and,
2d. That it will entirely destroy the use of his own dam
and mill situated within one hundred yards above the
proposed scite of the new dam. He insists that these
certain consequences of the exercise of the privilege
granted to Clark, either constitute an insuperable objec-
tion to the grant, or require, as a pre-condition to its ope-
ration, that he himself, should be compensated for the
injuries which they imply, the entire omission of which
compensation, is alledged to be an important error in the
proceeding, even if the privilege should have been grant-

'ed on any terms. It is contended on the other hand, that the existing dam of McDougle is worth nothing, that the mill having been burnt down nearly two years before the present application was made; and no indication having been given of an intention to rebuild it, nor any step taken with that view, until after this application was made, the mill privilege of McDougle was lost, and that the little mill built by him during the pendency of this proceeding in the County Court, was a mere pretence resorted to for the purpose of defeating this application, and preserving his own privilege without a real compliance with the objects for which it was granted or the requisitions of the law; and that the dam and mill and claim of privilege were, therefore, properly disregarded. And with regard to the alledged spring, it is contended that it is a mere seap from the old dam, of no value, and never used or regarded as a spring until it was deemed important to treat it as such with a view of defeating or obstructing the present application.

It appears that when the jury acted under the writ of *ad quod damnum*, the place claimed as a spring was covered by the creek, which was then flush, and it does not appear that McDougle, who lived in the State of Tennessee, and at some miles distant from the premises in question, had any notice either of the application or of the holding of the inquest, until after the writ was returned. These facts are only important as tending to show that the interests of McDougle may not have been fairly presented to the jury, or fully considered by them, and thus to free the question as to the extent of the injury done to him in respect to his spring and dam and mill privilege, from the weight of any inference which might be drawn from the silence of the inquest in relation to it.

The principal question in the case is, whether the failure of McDougle, for near two years, to commence the re-building of his mill, and his declarations previous to Clark's applying for the privilege, importing that he did not intend to rebuild, authorized the County Court to disregard entirely, both his claim of privilege and his dam and mill, as they actually existed before and at the time of granting the privilege to Clark. The 6th section of

*The overflowing of a spring by the erection of a mill dam, is a proper subject of consideration in determining upon the propriety of permitting its erection: (1 Bibb 377; 3 A. K. Marshall, 328.)*

the statute regulating this subject, (2 *Stat. Law*, 1214–15,) after enumerating several inquiries which shall be a ground for refusing leave to build a mill and dam, puts the determination of the question, in the absence of these inquiries, upon the reasonableness, under all the existing circumstances, of granting or refusing the leave asked. Among the circumstances to be considered and compared in coming to a conclusion, the existance and degree of public necessity or convenience demanding the erection of a mill as proposed, is doubtless entitled to the first place: and although the particular advantage of the individual making the application, is not to be regarded as a motive for action by the Court, the injury to be occasioned to other individuals is to be considered. And in proportion to the magnitude of such injury, so must be the urgency of the public exigency, to justify the Court in inflicting the injury, which even then cannot be properly authorized except on the terms of making compensation. Hence, although the destruction of a spring used for domestic purposes, is not one of the injuries on which the statute grounds its prohibitions, it has been decided that such an objection should prevail in defeating an application for leave to build a mill, &c., unless the public necessity imperiously require it, and that even in that case compensation should be made: (1 *Bibb*, 379; 3 *A. K. Marshall*, 328.)

In this case we may say, that although the convenience of the immediate neighborhood would doubtless be promoted by the erection of a good mill at the proposed site, in case there was not one at the old site of McDougle's mill, yet there is shown to be such a number of mills within convenient distance around, that we do not think the necessities or even convenience of the public is so far involved as to be entitled to any very decisive effect in determining the question, and certainly not to such an extent as to require the infliction of serious injury upon any individual.

But it is said in effect, that the dam and mill of McDougle, besides being of little or no value, exist without any right on his part, and do not answer the public requirements, and that, consequently, their actual existence

should form no obstacle to the grant of a mill to another, and their actual destruction should, in law, be regarded as inflicting no injury on McDougle.   If the premises of this argument were true, they would be far from proving that the actual existence of a mill and dam within a hundred yards of the proposed erection, (though not coming up to the wishes of the neighbors,) and their certain destruction by the dam proposed, are not circumstances affecting the reasonableness of the proposition for a new mill.   They are circumstances entitled to weight upon the question, because on the one hand they actually supply, to some extent, the wants and conveniences of the public, and so far diminish the force of any requistion for a new mill, and on the other, they constitute an actual interest which will be injuriously affected by the new dam, and which, therefore, should not be disregarded.

But we have not been convinced and do not admit that McDougle's present mill, though not commenced until more than one year after the old one had been burnt, nor until after Clark's application had been made, is to be regarded as existing against or without right, and as not being entitled to the protection of the law.   A privilege had been granted for erecting the mill and dam as early as 1811, and although they may not, in fact, have been erected nearer than half a mile from the point designated in the grant, they were, in fact, erected or commenced in 1811, and have continued ever since, until the mill was burnt, (with some injury to the dam and forebay,) in the spring of 1844; and in March, 1846, the small mill was erected, which has been in operation since.   The application of Clark was made in February, 1846; the writ of *ad quod damnum* was returned in March, when a summons against McDougle was ordered, which does not appear to have been executed until April; and at the May Court the order was made granting to Clark the privilege to build a mill.

Whether the mill was originally built under the order of 1811 or not, its legality, after a continued enjoyment of 33 years, must be assumed.   The mill and one of the abutments of the dam, were on the land owned by the party who erected them, and the dam was extended

McDougle
vs
Clark.

to a proposed mill dam, and which will be destroyed or materially injured, is a subject of consideration in determining upon the propriety of permitting a new dam to be built.

—Such should be the case, whether the mill had been legally established or enjoyed for a great length of time.

across the creek and the abutment erected on the other side with the knowledge of the owner of the bed of the creek and of the land on that side, who not only acquiesced, but in a few years afterwards, and more than twenty years before the mill was burnt, conveyed to the then owner of the mill, five acres of land, including the abutment last referred to, and running up and down the creek at low water mark. To the rights arising from these facts and from the continued enjoyment of the mill and dam and the adjacent land, McDougle succeeded; and we are satisfied that when his present mill was burnt, he was to be regarded as the owner of both sides, and also of the bed of the stream, and was fully authorized by law to rebuild his mill.

The 14th section of the statute declaring as the consequence of a neglect for more than one year to re-build a mill, the reverter of the condemned acre of land to its former owner, does not literally apply to this state of case, because McDougle owned five acres on which his dam abutted on the one side, and near 300 acres on the other. · And this provision can have no other operation in such a case, but that which is clearly indicated as its object, viz: to authorize the County Court, in obedience to the public exigencies, and in view of all the circumstances of the case, to grant the privilege to another if the previous grantee unreasonably neglects the service which is the real consideration of the grant. The same section imposes the same forfeiture of the condemned acre, in case of a failure to commence the mill in the first instance in one year, and to complete it in three, or to keep it in good repair afterwards. But surely this would not authorize the Court, without regard to other circumstances, to grant the privilege to another, with the effect of destroying not only the first privilege, but whatever may have been done and expended under it. The Court is to act reasonably and with discretion, in view both of the public necessity or convenience and of the private injury; and although the fact that a man has an advantageous site for a mill which he has never attempted to appropriate in that way, and that it will be destroyed by granting the privilege to another, is entitled to no considera-

The statute declaring a reverter of land condemned for mill purposes, for a failure to re-build, does not in terms apply to cases where the owner of the mill owns the land on both sides of the stream.

tion whatever, in deciding on the application of another, and is not even to be regarded as implying a specific injury for which he is to be compensated, (for such a principle might often defeat every application,) the case is very different when one of several persons having sites upon a stream, has actually appropriated his own site and the flowing water to the uses of a mill. It is to be a matter of sound and reasonable discretion, whether his preparations for the accommodation of the public are such as should be deemed sufficient to prevent a grant to another to his injury, and how long, when as in this case he is the owner of both sides of the stream, one who has obtained a grant of the privilege may neglect to commence or complete his dam and mill without forfeiting the preference or advantage which he has acquired. If in consequence of the grant, he had purchased the fee of the land on which the dam was to abut, and had made other expenditures preparatory to the work, the mere failure to have made an actual commencement of the building within a year, would not be a reasonable ground for granting the privilege to another, with the effect of destroying the value of his outlay, if there was reasonable ground to believe that he would proceed to make such a mill as the public exigencies required, and in such time as would put the public to no serious disadvantage. And so if he had commenced within the year, and before the expiration of three years had made considerable progress in the work, nothing would justify the grant of the privilege to another with the effect of destroying, without making compensation, the value of what the first had in good faith done towards the erection of a mill and dam, unless his delay was wholly inexcusable, and the circumstances showed an utter disregard of the public requirements, and in effect an abandonment of his privilege. We think the case of the casual destruction of the mill or dam, after they had been completed, leaving a portion of either, which might be substantially useful in re-constructing them, stands virtually on the same ground; and that even if the mill and dam were both swept away, the owner who had met with such a misfortune would, even after the lapse of a year without beginning to rebuild, be entitled to

McDOUGLE
vs
CLARK.

preference over any new applicant for a privilege which would destroy the first, unless it should appear that the first grantee had delayed re-building without reasonable excuse, or that he would not re-build in such manner and within such period as would meet the public exigency. And we think the same principles are applicable to the case whether the first mill were erected under a grant of privilege in pursuance of the statute, or having been erected without such grant, had by long continuance, established the right of the owner. The right thus established, by long use and enjoyment, is not superior to the right granted under the statute, and is equally subject in case of neglect, to be defeated by a new grant under the statute.

In the present case, the remaining dam of McDougle, though requiring repair, is not in such a condition as to be without value, or useless in the preparation of a useful mill, casual declarations importing a disinclination to incur himself the expense of re-building, indicating the apprehension that the former mill had been burnt down to injure him, but implying a continued assertion of the right, and an expectation that the mill would be re-built, are not evidence either of a waiver or of an entire disregard of the public interests, which, as we have said, do not imperiously require a mill at that place. The fact, that up to the commencement of the present proceeding, his purchase of the property made in 1842, was not completed by conveyance, and probably not by full payment, and that the title remained in the infant heirs of the former owner, whose right is saved by the statute, may form some excuse for the delay in commencing or providing for the re-building of a proper mill. And this proceeding itself, which threatened to destroy the entire value of his privilege, and of whatever he might attempt to do under it, accounts for and excuses the character of the slight structure and inefficient machinery which was hastily put together in March, 1846, and which being in truth nothing more than a makeshift to preserve his right, should not be regarded as a compliance with his duty and the objects of the statute, but only as evidence of his intention to comply, and thus to preserve his privilege. We

*The court should exercise the power of permitting a new mill to be erected after one has been destroyed, with a reasonable regard to the public necessity and the rights of the owner of the former mill, and protect his interest and rights against injury from the grant of a new mill privilege.*

do not concur in the position that his acts done under an existing right after the commencement of this proceeding, are not to be taken into consideration in determining on the propriety of granting the adverse application, any more than we concur in the position advanced on the other side, that his privilege established by long user can only be lost by non-user for twenty years. The privilege, however, established has its corresponding duties, which constitute the consideration for protecting it, and according to the spirit and intent of the statute, is subject to forfeiture for the unreasonable neglect of those duties.

Without laying any stress upon the circumstance which as it is argued, should have prevented Clark, in consequence of his connection with the title and the purchase of McDougle, from attempting to defeat his privilege, we are of opinion, for the other reasons advanced herein, that his privilege and his property connected with it, could not properly be disregarded when this application was granted, and that they at present, constitute such an obstacle that the privilege should not have been granted to Clark, without making compensation to McDougle, at least to the extent of the actual value of his present mill and dam. But as by the present decision, McDougle's privilege will be established, we are of opinion, that in analogy to the requisition and in accordance with the object of the statute, it will be incumbent on him, in order to preserve his privilege, to proceed in good faith, within a year after this case returns to the County Court of Christian, to put his dam and mill in such a condition as will be substantially serviceable, and will promise to meet the wants of the public. The present mill is not of that character.

With respect to the spring, we need only say that although the evidence with regard to its use and quality is very contradictory, and although we are inclined to the opinion that it is a seap from the dam above, and is little better than the water in the creek by its side, and has not been habitually relied on for domestic purposes, it is still of some value as a spring, and its loss should have been compensated in establishing the mill below it.

But upon the whole case, we are of opinion that under the existing circumstances, the grant of the privilege to Clark, upon payment of the two sums named in the order, was unreasonable.

Wherefore, the said order granting leave to Clark to build a mill and dam below and near McDougle's dam, is reversed, and the cause is remanded with directions to overrule his application.

*B. & A. Monroe and Robertson* for appellant; *Harlan* for appellee.