JUDGE HARDIÍT
delivered the opinion of the court.
J. F. Collier having been adjudged a bankrupt in February, 1868, his estate was assigned, by the register in *152 bankruptcy to the appellant, under the provisions of the general bankrupt law approved March 2,1867.
The appellant, as assignee, brought this suit in August, 1868, to recover and subject to the payment of the bankrupt’s debts about two hundred and twenty-five acres of land in Shelby County, and a considerable amount of personal property, which w:as claimed by Mrs. Nannie O. Collier, wife of J. F. Collier, as her separate estate, the parties having by agreement waived any existing objection to the jurisdiction of the circuit court.
The recovery sought by the plaintiff was resisted by Collier and wife, and, on a final hearing of the cause, the court adjudged that the property in contest was the separate estate of Mrs. Collier, and not subject to the debts of her husband, and dismissed the petition; and from that judgment the plaintiff has appealed to this court.
By appropriate pleading and proof it sufficiently appears that on the 17th .day of February, 1862, J. F. Collier and his two brothers, Michael and Joseph Collier, who were partners with him in farming and trading in stock, made an assignment .of their property to J. A. Middleton intrust for the benefit of their creditors; their indebtedness then amounting to about sixty thousand dollars, and the property assigned and conveyed to about forty thousand dollars. The property embraced a tract of about seven hundred acres of land in Shelby County, including one hundred and two and a half acres in which Mrs. Jincy Collier, a woman of advanced age, owned an estate for her life as dower, and in which the grantors’ two sisters— Mrs. Helm and Mrs. Miller — also owned an interest of one fourth in remainder. It also embraced three hundred and nineteen acres of land in the state of Ohio, part of a lot in the city of Louisville, a large amount of personal *153 property, and several slaves, including J. F. Collier’s interest in three slaves named Bill, David, and Milas, the three last' being claimed by Mrs. N. C. Collier as stated in the assignment. As to these slaves, it appears that, Middleton having brought a suit to test the question of title in them, it was decided in 1865, when slaves in Kentucky had ceased to be of much value, that David and Milas were when the assignment was made the property of J. F. Collier. It further appears that Middleton, having accepted the trust imposed on him, proceeded in April, 1862, to sell the personal property and rent the land at public auction; and thereupon Samuel McWilliams rented for Mrs. N. O. Collier one hundred and ten acres of meadow land at seventy-four dollars. S. P. Middleton rented for her twenty-five acres of corn land, one half of fifty-five acres of wheat, and one hundred acres of blue grass for two hundred and twenty-four dollars. Thesé rentings were for the year 1862. And at the same time her brother, A. Tribble, and brother-in-law, George W. Mason, purchased for her personal property amounting to $648’.10, which Mason afterward paid; and on the 23d of December, 1862, the assignee conveyed this property, consisting of stock and farming utensils, to Mason, in trust for the use of Mrs. N. C. Collier and her children, <£to be held and enjoyed by her and her family, under the direction and control of said Mason,” The money paid by Mason for this property, as well as the rent of the land, appears to have been raised from the produce of the land. The assignee rented out the land again in January, 1863, and Mason rented five hundred and eighty acres of it for that year for Mrs. Collier at the price of thirteen hundred' dollars, for which he and Ann Marmaduke gave a note, which Mrs. Collier afterward paid with money realized by the cultivation of the land.
*154 It further appears that on the 27th of October, 1863, the assignee proceeded to sell the land in Shelby County at auction, when Mrs. Collier became the ostensible 'purchaser of about two hundred acres of it, including the dower of Mrs. Jincy Collier, on which she and J. F. Collier and family resided, at the price of $13,740.78, payable in three equal installments, the first at the time of sale, and the others twelve and eighteen months thereafter, with interest. No bond for the conveyance of the land wa3 given, nor were notes taken for any part of the price; but it seems to have been agreed between the parties that notes were to be given, with security, for the unpaid purchase-money, and a deed made to Mrs. Collier vesting the title in her and to her sole use as separate estate. This was never done; but seems to have been neglected by the assignee notwithstanding the repeated solicitations of Mrs. Collier; although in January, 1864, a deed was prepared and signed by Joseph Collier, one of the assignors, which, as it did not purport to vest the title as the parties had intended, was rejected, and never executed by the assignee or the other assignors.
It further appears that on the 27th of May, 1865, Mrs. Collier became the ostensible purchaser of Mrs. Miller’s interest of one eighth of the dower tract of one hundred and two and a half acres at the price of eight hundred and sixty-seven dollars; and on the 17th of January, 1867, she purchased tíre like interest of Mrs. Helm at the ¡Drice of one thousand and twenty dollars.
It seems from the evidence that Mrs. Jincy Collier gave to her daughter-in-law, Mrs. N. C. Collier, the use of her dower in the land, and of two negro men and a woman and a boy, until her death, which occurred in 1866.
From April, 1862, until the institution of this suit the land and other property acquired as aforesaid in the name *155 of Mrs. Collier was superintended by J. F. Collier as the active business manager, assisted during part of the time by his brother, Michael Collier, who died in 1865. The farming business thus conducted in the name of Mrs. Collier was managed with extraordinary success; and mainly from its proceeds the price of the land bought of Middleton appears to have been fully paid, and about seven hundred dollars to Mrs. Miller and five hundred dollars to Mrs. Helm on the purchases made of them.
It appears, however, that in paying for the land she received by gift or advancement from her father, Dudley Tribble, the benefit of the proceeds of a debt on her husband and others, amounting to $1,903.61, and five hundred dollars-as a gift from Harbison, besides five hundred dollars more furnished by Tribble; and while the personal property on the farm when this suit was brought amounted to about two thousand dollars, Mrs. Collier had contracted an indebtedness, then remaining unpaid, of about five thousand dollars, part or all of which may have been for money used in paying for the land or other property sought to be subj ected in this suit.
It is proper further to notice, in relation to the accumulation of the property in controversy, that in January, 1863, R. C. Tevis, having contracted to feed horses and mules for the use of the Federal Government, agreed with J. F. Collier, as agent of his wife, to form a partnership with her in that business; it being part of the arrangement that the stock was to be kept and fed on the land cultivated in the name of Mrs. Collier, and that J. F. Collier would devote his personal services and business capacity to the care of the stock and management of the business in connection with Tevis. This partnership was continued until the summer of 1865, and during that time Tevis paid over to Mrs. Collier over ten thousand dollars *156 on account of the produce of the farm and profits of the partnership business.
This somewhat lengthy statement of the facts of the case has been deemed necessary in order to show the application of the questions of law presented for decision.
"Whether the appellant, by virtue of the assignment in bankruptcy, was authorized to prosecute the suit, is the first question to be determined. It is argued for the appellees that the assignee stands in the position of the bankrupt, with only such rights of action as he possessed before the act of bankruptcy, except in relation to fraudulent conveyances made by him. But, according to our construction of the 14th and 35th sections of the bankrupt law, the powers of assignee are, from the nature of the duties and trusts devolved upon him, much more comprehensive than 'conceded to be by this argument. And although the rights of property to which he succeeds are only those to which the bankrupt had legal or equitable title, it seems to us his rights of action are not limited by those of the bankrupt, who may have been estopped by his own fraud, or voluntary disposition of his property otherwise made, than by a fraudulent conveyance; but that generally, where a creditor might have sued to subject the property, the assignee can maintain an action for its recovery for the benefit of creditors.
Whether J. F. Collier might or might not therefore have had the right to avoid the claims of his wife, which he had recognized and sanctioned, we are of the opinion that the appellant as assignee could maintain this action to recover any property which might have been subjected by Collier’s creditors if he had not become a bankrupt.
The next and most important inquiry is, whether, notwithstanding the legal or equitable rights of Mrs. Collier, as between herself and husband, growing out of *157 the transactions we have recited, J. F. Collier has such-legal or equitable right to the property in controversy, or any part of it, as is liable to the claims of his creditors ?
It is insisted for the appellees not only that J. F. Collier has no interest in the property which could be subjected to his debts, but that the peculiar facts and considerations on which the claim of Mrs. Collier is founded are such as to impress on all the property, both real and personal, the character of separate estate in her, which the court is asked to protect from the claims of her husband’s creditors.
As to the characteristics of such an estate, and the manner in which it may be created, the authorities seem to be uniform and explicit. As protected by our statutes, and recognized by this court, it is such estate of a married woman as has been vested in her, for her separate use, to the exclusion of her husband’s marital rights therein. (Petty v. Molier, 14 33. Mon. 247; Bowen v. Sebree, &c., 2 Bush, 112.) And it seems that no particular form of words is necessary to create such an estate; so that it clearly appears that the title was passed and accepted with the intention that it should vest in the feme covert, for her own benefit, to the exclusion of her husband. (2 Story’s Equity, see. 1381; Clancy on Rights, 262; Hutchinson, &c. v. James, &c., 1 Duvall, 75.)
Nor is it essential to the creation of a separate estate in property, the title to which will pass without a written transfer or conveyance, that the property should be transferred by any written instrument. (McClanahan v. Beasley, 17 B. Mon. 111; Tinsley, &c. v. Roll, 2 Met. 509.)
But although a feme covert may acquire the possession of property as separate estate according to the general principles we have indicated, yet if its acquisition was in consideration of the money or property of her husband, *158 which was subject to the claims of his antecedent creditors, the wife’s claim will generally be made to yield to those of the creditors. (Doyle, &c. v. Sleeper, &c., 1 Dana, 531.)
Recurring to the facts of this case, it seems to us, from the evidence concerning the gift or advancement by Dudley Tribble of the sums of $1,903.61 and $500 to Mrs. Collier, and the gift to her of $500 by Harbison, as well as the use of the dower-land and slaves of Jincy Collier, that all these were voluntarily given or furnished to Mrs. Collier for her own benefit, exclusive of her husband; and as the investment of this money and property, or their proceeds, in land, as her sepei’ate estate, was no fraud upon the creditors of J. F. Collier, we are of the opinion that, so far as they have entered into the purchase or production of the real or personal property in contrpversy, her title thereto is valid, and should be sustained.
We are further of the opinion that, as it sufficiently appears that in accumulating the property in controversy Mrs. Collier has incurred an indebtedness of about $5,000, the same should be correctly ascertained and adjudged to be satisfied as a preferred charge on the property. It seems to us also that although the price of the personal property transferred to Mason in trust for Mrs. Collier was repaid to Mason from the products of the farm, that fact did not impair the separate rights secured to Mrs. Collier by the deed, and the appellant is not entitled to any recovery as to that property or its proceeds. And as “the savings hy a feme covert out of her separate property are hers” (Clancy, supra, 276), the products and accumulations of her separate estate must be included in estimating her present interest in the propertj- in controversy. As to the residue of the property no available ground is perceived on which the claims of Mrs. Collier can be sustained.
It can not be disguised that the personal labor and *159 capacity of J. F. Collier contributed largely to the accumulation of the property; but if they did not, and the successful business conducted in her name, in farming and feeding government stock, -was wholly managed by her, and its profits resulted alone from her industry, skill, and economy, still as, by the settled principles of law which govern the relative rights of husband and wife, even the proceeds of her labor and industry ordinarily belong to him, we should be constrained to regard the property so acquired as subject to the debts of the husband, whatever equitable rights the wife might haye as between herself and him; with this exception, however, that the skill, care, or labor of either husband or wife, bestowed on her estate so far as may be reasonably necessary, inures to the benefit of such estate, and does not render it liable to the husband’s debts. (Basham v. Chamberlain, &c., 7 B. Mon. 448; Switzer v. Valentine, 4 Duer, 96; Hallowell, &c. v. Hoster, 85 Penn. 375; Glenn v. Younglove, 27 Barb. 480.)
We are of the opinion therefore that J. F. Collier owned an interest in the property in controversy, which, except so much thereof as was reserved to him by law, passed by the assignment in bankruptcy to the appellant, who to that extent was entitled to recover in this action; the relative interests of the parties being first ascertained by a commissioner, and provision being made as to those of Mrs. Collier, so as least to aft'ect her title, possession, or use of so much of the property as she may have a right to retain according to the principles of this opinion.
Wherefore the judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.