### J. J. SANDERS'S ASSIGNEE, ET AL., v. M. DUVALL.

**Mortgage—Foreclosure—Lien for Purchase Money.**

> The owner of real estate cannot by mortgaging it defeat a bona fide claim for balance money when the creditor by express provision reserved a lien on such real estate.

**Parties to Action to Foreclose Mortgage.**

> The legal title to real estate does not pass to a purchaser at judicial sale and conveyance where the holders of the legal title were not made parties in the case resulting in such judgment and order of sale.

**Assignee in Bankruptcy.**

> An assignee in bankruptcy is not like an ordinary assignee who takes such rights as his assignor had, but he also represents the creditors of the bankrupt and is entitled to enforce all their equities.

APPEAL FROM SHELBY CIRCUIT COURT.

March 23, 1876.

OPINION BY JUDGE COFER:

Whites purchased a tract of land of Crawford and it was sold under a judgment enforcing a vendor's lien for purchase money, and Snook became the purchaser. Snook paid the purchase money and sold the land, or the benefit of his purchase, to Sanders. Sanders paid the first and second instalments of the purchase money, and his note for the third and last instalment was assigned by Snook to Duvall.

Duvall sued Sanders to enforce the payment of the note by a sale of the land, and no deed having been made to Snook in execution of his purchase at the decretal sale, it was agreed between Snook, Sanders and Duvall that a deed should be made by a commissioner in the suit of Crawford against Whites, directly to Sanders, in which a lien should be retained on the land in favor of Duvall to secure the payment of the note he held on Sanders.

A deed was accordingly made which recited the judgment in favor of Crawford, the sale under it, and purchase by Snook, and that the court had ordered the conveyance to be made to Sanders; it also acknowledged the payment in full of the purchase money; but the record of the case of Crawford against Whites shows that the purchase money referred to as paid was not the purchase price agreed to be paid by Sanders to Snook.

By an arrangement between Sanders and Duvall, the suit of the latter was dismissed, and Sanders executed a new note for the

amount then due, and pursuant to the order of the court directing the conveyance to be made to Sanders, the following clause was inserted in the deed, viz.:

"It is, however, distinctly understood and agreed by the party of the second part that Maime Duvall has and holds a lien on the above described tract of land to secure the payment of the note of J. J. Sanders to Maime Duvall for $2,674.20, dated March 12, 1872, payable twelve months after date, with interest at 10 per cent. per annum as appears by agreement of parties and orders of court herein."

The order of court referred to was made on the day the deed bears date, and directed a lien to be retained in favor of Duvall. That order was made pursuant to the written statements of Sanders and Snook filed in the case. Sanders's statement was that he had purchased the land of Snook and paid the purchase money, except the last instalment, for which Duvall held his note by assignment from Snook; and he asked that a deed be made to him securing the note to Duvall, to which he said he was advised Duvall consented.

Snook, in his statement, asked the court to order the land to be conveyed to Sanders upon his paying Duvall's debt or giving to him a lien upon the land to secure it, if that should be acceptable. The deed bears date March 14, 1872. October 5, 1872, Sanders mortgaged the land to Kinkade and Wise to secure them as his sureties in a debt of $1,184.60 he owed one Hanna. In July, 1873, Duvall brought suit to enforce the lien attempted to be secured to him in the deed. To that suit Kinkade and Wise were not made parties.

September 2, 1873, Sanders made an assignment to Kinkade and Wise of all his property for the benefit of all his creditors, but to pay first after the expenses of the trust, including compensation to the trustees, "the preferred debts of Maime Duvall, the amount of which is about $2,500, and a debt due to A. Hanna for $1,180, with interest, both of which are secured by mortgages; that is to say that there are mortgages on the land of the party of the first part to secure the payment of same. The mortgage to Kinkade and Wise, after setting forth the object of its execution contains this clause: "subject, however, to a lien for the balance of purchase money due on said land to M. Duvall, Sr., for about twenty-five hundred dollars."

In September, 1873, Duvall obtained judgment by default against Sanders for the amount of his note, and to enforce the lien asserted on the land under the deed from the commissioner to Sanders. A sale was made under that judgment and Duvall became the purchaser. The sale was reported to the March term, 1874. Between

the date of Duvall's judgment and the sale under it, Sanders was adjudged a bankrupt, and the appellant, Gardner, was appointed his assignee.

At the March term, 1874, Ballou, a creditor of Sanders and Kinkade and Wise, and the assignee in bankruptcy, filed exceptions to the sale and it was set aside; but no order was made directing a resale. A resale was, however, made when Kinkade and Wise became the purchasers, April 13, 1874. Upon the coming in of the report of that sale the purchasers and the assignee in bankruptcy filed exceptions to it upon grounds set forth in a petition of the latter filed September 7, 1873, against Duvall, Kinkade and Wise.

That petition sets forth the adjudication of bankruptcy, the appointment of the plaintiff as assignee, the suit by Duvall, the judgment and sale under it, and purchase by Kinkade & Wise; the mortgage and the assignment to them, and claimed that Duvall had no lien, that there were unsecured creditors of Sanders holding debts to the amount of $5,000, and praying that the sale be set aside, and for an injunction enjoining Duvall from selling the land under his judgment.

Kinkade and Wise answered, admitting the truth of the allegations of the petition, and asked that the sale should be set aside upon the grounds stated in the petition but professing a willingness to complete the purchase if they could procure a good title. Duvall answered and set out in detail the facts respecting the attempt to secure to him a lien on the land by the provisions in the deed to Sanders, and insisted on the sufficiency thereof to give him such lien, and he averred that if the lien was not secured by the deed the failure was the result of mistake and he prayed that it might be corrected so as to effectuate the intention of the parties.

The circuit court, on hearing the cause, dismissed the petition of the assignee, and overruled the exceptions to the report of sale, and this appeal is prosecuted by the assignee and Kinkade & Wise to reverse that judgment and order.

It is not alleged that the land sold for less than its value, or that Kinkade and Wise now have any claim upon the land under their mortgage. The debt claimed by Duvall is not controverted, nor is it disputed that it is for a part of the purchase money which Sanders undertook to pay to Snook for the land. No fraud or unfairness is alleged, and the principal grounds relied upon for a reversal are that Duvall had no lien, and that Kinkade & Wise were necessary parties

to the suit of Duvall to subject the land to his debt. We will dispose of the latter question first.

Kinkade & Wise held the legal title to the land, and should have been made parties; but what is the effect of the omission to do so? One effect would be that the legal title would not pass to the purchasers under a judgment, sale, and conveyance made in that case; and this, it seems to us, would be all, unless it may have been calculated to produce a sacrifice of the land in the mortgages to the prejudice of Sanders. The judgment sale and conveyance to satisfy Duvall's lien, if he had one, would pass to the purchaser the rights of both Duvall and Sanders. The rights of Kinkade and Wise could not be affected, and they might have proceeded on their mortgage to subject the land to sale to pay first Duvall's lien, if any, and then to pay what might be due to them, and this the purchasers could not have successfully resisted.

So far as Sanders was concerned, having failed to make defense or to require Kinkade and Wise to be made parties, he had no just cause of complaint; and Kinkade and Wise as mortgagees have none, for they assert no claim under their mortgage which must now be regarded as satisfied. The judgment for a sale was rendered before the adjudication in bankruptcy, and the assignee has no ground for complaint unless he stands in a better position than the bankrupt.

Had Duvall a lien? Duvall is not a party to the deed, and is not the vendor of Sanders. The deed acknowledges the payment in full of the purchase money, but makes mention of the purchase by Snook and the order of court directing the conveyance to be made to Sanders, and also of the order directing a lien to be retained to secure Duvall, and that order, we have already seen, was based upon the written statements and request of Snook and Sanders. It was the intention of both Snook and Sanders to secure Duvall by a lien, and Snook only agreed to allow the deed to be made to Sanders on condition that such lien was secured and accepted by Duvall. Before the deed was made Duvall, as the assignee of Snook, had a lien, and it is not claimed that Duvall intended to surrender it; and if a lien was not secured it was because all parties made a mistake in choosing a mode of doing so, and against such a mistake the chancellor would, if necessary, grant relief.

But Sanders having not only recognized the lien in his mortgage to Kinkade and Wise, and his deed of trust to them, in which he refers to Duvall's as preferred debt, but having stood by and allowed

judgment to go enforcing that lien, he was precluded before he was adjudged a bankrupt from disputing the validity of the lien.

We do not, therefore, deem it necessary to decide whether the commissioner's deed, if taken alone, gave an enforcible lien or not, unless notwithstanding Sanders was unable to controvert it, his assignees in bankruptcy may do so. We concur with the counsel for the appellants that an assignee in bankruptcy is not like an ordinary assignee who takes any such rights as his assignor had, but he also represents the creditors of the bankrupt, and is entitled to enforce all their equities. *Shackleford, Assignee, et al., v. Collier, et al.,* 6 Bush 149. As a result of this doctrine an assignee in bankruptcy is invested with all the rights, legal and equitable, which the bankrupt or any creditor of his had at the date of adjudication whereby either could have secured assets to the bankrupt or for the payment of the creditor, and he is also vested with a right to recover any money or effects parted with by the bankrupt in violation of the bankrupt law, although no creditor could have reached it. This we think is the extent of the rights of an assignee in bankruptcy.

It does not appear in this record that any creditor of Sanders could, at the date when he was adjudged a bankrupt, have impeached Duvall's judgment. It is not claimed that his debt was not just, or that the judgment was procured by fraud, or that it was even inequitable. What equity, then, had any of Sanders's creditors to have the sale set aside and the judgment for a sale enjoined? The insolvency of Sanders gave them no such equity, unless the judgment came within the provisions of the act of 1856, and if they had such right, which does not appear, it has not been set up or relied upon. It is not alleged, nor does it appear that the judgment was in contravention of the bankrupt act. The suit was commenced and judgment obtained, enforcing an alleged lien September 6, 1873, and Sanders was adjudged a bankrupt January 22, 1874, more than four months thereafter.

It seems, therefore, that the lien, if it had no existence prior to the judgment, was valid against the assignee and that he has failed to show in any aspect of the case that he has a right to have the sale set aside.

The only objection that could have existed to the title derived under the judgment in favor of Duvall would have arisen from the mortgage to Kinkade & Wise, and as that appears to be satisfied, and they were the purchasers and can acquire a complete and valid

title by a deed from a commissioner, the judgment is *affirmed* as to all the appellants.

*Caldwell & Harwood, for appellants.*
*W. C. Bullock, for appellee.*