DAVID PERIN'S ADM'R *v.* JOHN S. JACOBY, ET AL.

**Partnership—Trust Estates.**

Where a settlement is made between partners at a given time and profits are divided between them, the partnership not being indebted at the time, one partner may invest his money thus received in land for his wife and children, and the same cannot be reached by creditors whose claims accrued after the date of said partnership settlement.

**Partnership Creditors.**

Where a partnership becomes indebted, and after such indebtedness is incurred one partner draws funds from the firm and improves or buys real estate for his children, such property may be subjected to the payment of such creditors.

APPEAL FROM THE BOURBON CIRCUIT COURT.

April 5, 1877.

OPINION BY JUDGE LINDSAY:

It is evident from the facts in this record that the decedent, Jacoby, out of his own means and by reason of his own toil and labor, had accumulated the money with which the tract of land sought to be sold was purchased. The trust fund belonging to his wife he had loaned out, except five hundred dollars, and this small sum could not have been regarded by him as the basis upon which to conduct his speculations. Although insolvent, he managed to obtain credit for the stock he purchased, and before he entered into partnership with appellant's intestate he had accumulated two or three thousand dollars, and after this partnership was formed the credit of the two parties enabled them to speculate largely in stock. The money thus made by Jacoby should be treated in the determination of this controversy as having belonged to him. In 1861, having made an assignment of all his property, his creditors, after settling with his assignee, released him, the debtor, from any further liability, so that when the partnership was formed he was not in-

volved in debt, although not the owner of any property liable to execution.

The only object we can well see on the part of Jacoby in conducting his business as trustee for his wife, and after her death as trustee for his children, was to secure to them the benefits resulting from his own industry and speculations. In 1866, when he purchased the land in controversy, he was not indebted to the appellant's intestate or to third parties, and the only motive prompting him to purchase the land, so far as appears from the record, was to provide a home for his children. His dealings as trustee seem to have been general and not concealed from any, and the deed for the land to his children made a matter of record. This was notice to the world of the manner in which this land was held, and the deal made at a time when he was not involved, and of course subsequent creditors could not be affected by it.

The partnership continued between Jacoby and Perin until the year 1869, and the notes executed to the latter by Jacoby seems to have been executed as trustee. Perin not only had notice, by reason of the deed of record, that the land was held by the children, but he had actual notice that the father was continuing to operate in his speculations as trustee, the notes he held being executed to him by Jacoby as trustee. The land, the title to which was in the children, was unencumbered except for the purchase money, and the father had no power to charge it by any speculative adventure so as to affect their rights. The partners had settlements of their partnership transactions nearly every year, and divided the profits or shared the loss. In 1866 they settled and ascertained that they had made five thousand dollars each. This profit was retained by each, and Jacoby, with the means thus accumulated by him, purchased the land and had the deed made to his children. He was then not indebted to his partner or others, and had a perfect legal right to buy the land for those he was in duty bound to maintain. It presents a case of partners not involved having a settlement during the continuance of the partnership and dividing between each other the actual profits made. In such a case we see no reason why the money thus obtained by one of the partners cannot be appropriated by him in the purchase of land or other property for his wife or children. The partner in this case had notice that the fund was withdrawn and no longer constituted a part of the firm assets. He had notice that the partner had invested this money in the land by the recording of the deed from Massie. He must have known that Jacoby

had no other means with which to make the purchase. The settlement between them and a division of the profits took place in January, 1866, and the land was purchased and conveyed to the children within two months afterwards. The appellant's intestate, with the knowledge of the manner in which this investment had been made, continued to operate with Jacoby until they sustained heavy losses, and now seeks to subject the land conveyed to the children to the payment of their father's portion of these losses. He dealt with the party as trustee. The deed was a matter of record, and it is to be presumed he had notice of such facts as would have put any prudent man on inquiry as to the nature and character of the trust, and the terms upon which the trustee was holding the property, or means with which he was conducting his speculations. It is, therefore, clear the appellant can have no relief upon the idea that his intestate was in any way defrauded or overreached.

But it appears that after the $5,000 had been paid to Massie, and while Jacoby professed to act as trustee for his children and as a partner with Perin, he paid on this land out of the means thus acquired the further sums of $800, July 10, 1867, $1,000, June 20, 1868, and $800 December 27, 1869. The balance of the vendor's lien was satisfied by a sale of fifty-four acres of land. Hence we have a case in which a father gave to his children $5,000, under circumstances affording no ground of complaint to subsequent creditors, and in which he afterwards gave to them $2,600, earned by him while professing to act as their trustee. If they ratify his acts as trustee and claim the advantages resulting therefrom, they must pay the debts contracted as trustee. If they repudiate these debts, and they do repudiate them, then they cannot complain that the funds paid for their benefit while such debts were being contracted, be reclaimed by the creditors of their self-constituted trustee. It is perfectly palpable that this money was earned by the father of appellees, and that it is the product of his labor, industry and enterprise. No doubt he realized something from the use of the appellees' farm, but nobody more was interested on improvements on the farm, and this investment is not to be disturbed.

We will not inquire whether the debts due to the appellee were contracted before or after the last three payments on the land. The profits and losses were made and sustained in a series of partnership adventures, and there is nothing in the record to show that Perin had notice that Jacoby was continuing to disable himself from meeting his liabilities by further gifts to his children after the first gift

of $5,000. Hence, according to established principles of equity, these creditors must be permitted to reclaim this fund, or rather to have it as an investment subject to the payment of Jacoby's debts. *Northcut v. Daniel,* Mss. Opinions, April 6, 1876; *Shackleford, Assignee, v. Collier,* 6 Bush 149.

For the purpose of affording the relief indicated, the 92 acres of land will be partitioned in the proportion that the $5,000, with interest up to December 27, 1869, bears to the sum of the three payments subsequently made, with interest on the first two up to the same date. In making this partition the appellees will be allowed the dwelling houses, barn and outhouses actually built since the conveyance, to them, without charge therefor. The remainder of the tract, or so much as may be necessary, will then be subjected to the payment of appellant's claims.

Judgment *reversed* and cause remanded for a judgment conformable to this opinion.

*J. I. Ward, for appellant. R. H. Hanson, for appellees.*