CASE 47—PROBATE OF WILL—OCTOBER 7.

## Hiram (of color), &c. v. Griffin, &c.

APPEAL FROM SHELBY CIRCUIT COURT.

1. A WILL MADE BY A MARRIED WOMAN LIVING SEPARATE AND APART FROM HER HUSBAND, disposing of land conveyed to her by a deed not technically such as by itself to constitute a separate estate, is sustained and established—the estate being otherwise held to be impressed with the character of separate estate.

2. See opinion for a full statement of the facts and circumstances of this case, showing that the wife held the land as separate estate, having purchased it with the proceeds of her separate estate, and had the right to dispose of it by will, although conveyed to her by an ordinary deed, using none of the words necessary to constitute it technically a separate estate.

3. A gift of a house and lot and fifteen hundred dollars in money made by the husband and accepted by the wife, in contemplation of his continued abandonment of her, had the effect of placing said property beyond his control, and vesting it in his wife for her separate use, and impressed it with the character of separate estate.

4. It was not essential to render such a provision effectual that a third party should have intervened as a trustee for the wife. (Tyler on Infancy and Coverture, 471.)

5. Separate estate being sold, and the proceeds reinvested from time to time, the character of the consideration paid attached to the property thus acquired, and continued to exclude the marital rights of the husband.

6. A liberal construction will be given to the statute conferring on married women the right in certain cases of disposing of their separate property by will, with a view to effectuating the manifest objects of the law.

CALDWELL & HARWOOD, ⎱
BULLOCK & DAVIS, . . ⎰ . . . . . For Appellants,

CITED

Tyler on Infancy and Coverture, 471.
Civil Code, section 19, subsection 2.
4 Metcalfe, 85, Maraman's adm'r v. Maraman.
3 Metcalfe, 508, Gaines's adm'x v. Poor.
6 Bush, 149, Shackleford, &c. v. Collier, &c.
2 Dana, 215, Yates's Will.
18 B. Monroe, 65, Overton's heirs v. Overton's ex'rs.

BULLOCK, ANDERSON & WEISSINGER, ⎱
J. C. BECKHAM, . . . . . . . ⎰ . . For Appellees,

CITED

Revised Statutes, chap. 106, 2 Stanton, 457.
Jarman on Wills, page 29.
Revised Statutes, sec. 17, art. 10, chap. 47.
Clancy on Rights, 262.
1 Parsons on Contracts, 298, 299, 300.
3 Metcalfe, 503, Gaines's adm'x v. Poor.
17 B. Monroe, 58, Stuart v. Wilder.
14 B. Monroe, 198, Petty v. Malier.
2 Metcalfe, 508, Johnson v. Ferguson.
2 Metcalfe, 521, Toombs v. Stone.
2 Bush, 115, Bowen v. Sebree.
2 Story's Equity, section 1381.
4 Metcalfe, 85, Maraman's adm'r v. Maraman.
2 Dana, 215, Yates's Will.
1 Redfield on Wills, page 30.
1 Paige, 171, Clarke v. Fisher.

6 Bush, 157, Shackleford, &c. v. Collier.
1 Duvall, 76, Hutchinson, &c. v. James, &c.
16 B. Monroe, 284, Spurrier's heirs v. Parker.
4 Bush, 168, Worley v. Tuggle.

JUDGE HARDIN DELIVERED THE OPINION OF THE COURT.

Mary Griffin, a married woman, but living apart from her husband, Pierce Griffin, died in Shelby County, Kentucky, in 1870, leaving a paper duly executed and published as her will, dated the 5th day of May, 1870. She owned and died possessed of a tract of about one hundred and twenty-five acres of land, conveyed to her in 1867, and some personal estate, which she devised to the present appellants and others now parties to this litigation. The will having been proven and ordered to be recorded in the county court, said Pierce Griffin appealed from the judgment to the circuit court, where a trial of the issue of "*devisavit vel non*" was tried, and decided against the validity of the will, and this appeal is prosecuted for the reversal of that judgment.

The probate of the will was contested on two grounds: *First*, for want of mental capacity in the testatrix to make a valid testamentary disposition of her property; and *second*, for want of such particular title to the property devised, or interest therein, or special power of disposition, as was requisite to enable a married woman to make a valid will.

With reference to the first of these objections it is sufficient to say that the evidence does not seem to have been sufficient to sustain it; but the second point involves an inquiry of much more difficulty.

By section 2 of chapter 106 of the Revised Statutes it is declared that "every person of sound mind, not being under twenty-one years of age, nor a married woman, may by will dispose of any estate, right, or interest in real or personal estate that he may be entitled to at his death, which would otherwise descend to his heirs or pass to his personal repre-

sentatives, and though he may become so entitled after the execution of his will." And the fourth section of the same chapter provides that "a married woman may by will dispose of any estate secured to her separate use by deed or devise, or in the exercise of a special power to that effect."

The coverture of the testatrix at the date of the will being conceded, and there being no pretense that she made the will in the exercise of any special power to do so, it is obvious, in view of the statute, that the validity of the paper in contest must depend on the character of her title or interest in the property devised, and the mode or manner in which she acquired it.

It appears from the evidence that for some unexplained cause the testatrix and her husband, Pierce Griffin, after living together as husband and wife for many years, at first in Shelby County and afterward in the city of Louisville, mutually agreed to separate, in 1866, and did so; he going to the state of Mississippi, where he has since lived, and she returning to Shelby, the county of her former residence, where she remained till her death. At the time of the separation, or shortly thereafter, Griffin and his wife executed a written agreement, importing on her part a release to him of all future liability for her maintenance, and on his part the gift to her of a house and lot in the city of Louisville, and fifteen hundred dollars in money, which he paid to her at the time. The agreement did not provide for the interposition of a trustee for Mrs. Griffin, but Gordon Logan subsequently acted as her agent for disposing of the property; and to enable him to sell and convey the house and lot for her benefit Pierce Griffin united with her in an absolute conveyance of the property to Logan, who held it for her benefit, and finally sold it and disposed of the proceeds by reinvesting about five thousand dollars of the money in a farm in Shelby County, having the title conveyed to Mrs. Griffin, and by paying over to her a balance of about

eight hundred dollars. She afterward sold the farm to Logan, and executed her separate deed to him, which her husband afterward ratified at Logan's instance, by uniting with his wife in another deed, which was prepared and sent to him in Mississippi for that purpose; and the price paid for that farm by Logan was reinvested in that of which Mrs. Griffin died possessed, and which, as we have said, was conveyed to her in 1867.

It is contended for the appellee that the agreement between Griffin and his wife was void as against the policy of the law, and for want of legal capacity in Mrs. Griffin to contract with her husband; and as it imposed no binding obligation on her it did not operate to invest her with any separate rights.

Admitting that the agreement of separation was against public policy, and such as a court of equity would have refused to effectuate or sanction if appealed to for that purpose, and that the stipulation of Mrs. Griffin as to her future maintenance could not have been enforced against her, it does not follow that the provision made for and accepted by her in contemplation of her husband's continued abandonment of her did not have the effect of placing the money and property beyond his control, and of vesting them in her for her separate use. If no separation had been intended and none had occurred, and the provision made was merely voluntary, it would not, in our opinion, have been in the power of the husband at his own option to revoke it. Much less reason has he now to question the validity of that provision, though appearing to have been intended as some compensation to his wife for his desertion of her for life.

Nor was it essential to render the provision effectual that a third party should have intervened as a trustee for Mrs. Griffin. Tyler in his work on Infancy and Coverture, page 471, in treating of this subject, says: "There seems to be no reason why the mere introduction of a trustee should be

sufficient to enforce the agreement in chancery. It certainly makes no difference with the effect of the contract. If, as having a tendency to the dissolution of the marriage contract, it is against the policy of the law in the one case, it most clearly is in the other. It is not now necessary to seek for the reason of this anomaly, for the balance of authorities, both in England and the United States, are in favor of sustaining such an agreement with or without a trustee."

But a further inquiry is as to the character of estate which Mrs. Griffin acquired under the original agreement, and owned at the time of her death, the greater part of which was, with her husband's assent and co-operation, twice converted from real to personal estate, and at last invested in the land of which she died possessed, which was conveyed to her by an ordinary deed.

In view of these transactions, and the continued residence of Pierce Griffin in a distant state, we do not doubt that his intention was at first to bestow upon his wife the house and lot in Louisville and fifteen hundred dollars in money, for her own separate use, to the exclusion of his own marital rights therein, and that they were so accepted by her, and were therefore impressed with the character of separate estate. (Gaines's administratrix v. Poor, 3 Metcalfe, 503; Shackelford, assignee, &c. v. Collier, &c., 6 Bush, 149.) And although the subsequent conveyances contain none of the technical words usually necessary to create a separate estate, we are of the opinion that the character of the consideration paid attached to the property successively acquired, and continued until the death of Mrs. Griffin to exclude the marital rights of her husband.

But admitting the separate character of the estate, was it so vested or secured to the use of Mrs. Griffin that she was authorized by the statute to dispose of it by will? Independent of statutory restrictions, the common law doctrine

seems to be that generally the creation of a separate estate in a married woman carries with it the right of disposing of it by will. Thus in the case of Fettiplace v. Gorges, 1 Vesey, jr. 46, the Lord Chancellor said: "I have always thought it settled that from the moment in which a woman takes personal property to her sole and separate use, from the same moment she has the sole and separate right to dispose of it." It is moreover certainly true that in this country the tendency is, and has been for many years, in the direction of removing all property disabilities attaching to married women. (Redfield on the Law of Wills, 22.)

We regard these facts as presenting strong considerations for giving to the provision of our statute conferring on married women the right in certain cases of disposing of their separate property by will a liberal construction, with a view to effectuating the manifest objects of the law. So, applying the statute to the transactions and conveyances through which the estate of Mrs. Griffin was acquired, we must regard it as having been secured to her separate use by deed, although the title to the land was transmitted to her by a stranger to the original transaction between her husband and herself, and by a deed not technically such as by itself to constitute a separate estate.

It results that, in the opinion of this court, the action of the lower court in peremptorily instructing the jury to find against the will, and the judgment based on the verdict so rendered, are erroneous; and this court being further of the opinion that the paper propounded as the will of Mary Griffin is her true last will and testament, lawfully made and published, the judgment is reversed, and the cause remanded with instructions to render a judgment affirming the order of probate in the county court, and make and direct such further orders as may be consistent with the rights of the parties as herein determined.