CASE 71—ACTION BY THE LOUISVILLE CITY NAT. BANK AGAINST MARY C. WOOLDRIDGE AND OTHERS FOR A BILL OF DISCOVERY AS TO CERTAIN PROPERTY OWNED BY CHARLES F. JOHNSON.—NOV. 10.

# Louisville City Nat. Bank v. Wooldridge, &c.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS. AND THE APPELLEE, MARY C. WOOLDRIDGE. FILES CROSS-APPEAL AGAINST LOUISVILLE CITY NAT. BANK AND THE ADMINISTRATOR OF MARY LAWRENCE JOHNSON, DECEASED. AFFIRMED ON ORIGINAL AND ON CROSS-APPEAL.

HUSBAND AND WIFE—MARRIED WOMAN'S WILL—RIGHT TO BEQUEATH PERSONALTY—HUSBAND'S CONSENT—FRAUD ON CREDITORS—REMAINDERS.

Held:   1. General Statutes, article 4, chapter 52, section 15, provides that corporate stock transferred to a *feme sole*, and expressed on the transfer book to be for her use, could be disposed

of by will with the consent of her husband, or without his consent if so expressed in the deed or will creating the trust. Kentucky Statutes, 1899, section 2147, converts all personalty of married women into separate estate, and confers power of deposition by will, subject to the provisions of the act. HELD, That a married woman can dispose of her personal estate by will, with the consent of her husband; the right having existed at common law, and not having been abridged by statute.

2. Kentucky Statutes, 1899, section 1906, provides that every gift, conveyance, etc., of any estate, with intent to delay, hinder and defraud, shall be void as against creditors. HELD, That the statute refers to property owned by the debtor, and it is no fraud as to his creditors for a husband to consent to a wife's testamentary disposition of her personalty.

3. Where a will gives testatrix's daughter a bequest, with a provision that if the daughter die before testatrix or the daughter's husband the legacy shall vest in the husband, the bequest in remainder takes effect only in the event of the death of the first taker before testatrix.

KOHN, BAIRD & SPINDLE AND C. H. SHEILD, ATTORNEYS FOR APPELLANT.

POINTS AND AUTHORITIES ON ORIGINAL APPEAL

1. The statute in force when Mrs. Johnson acquired this property, and when Colonel Johnson's marital rights therein attached, was General Statutes, chapter 113, sections 2 and 4, and under this statute Mrs. Johnson had no power to dispose of this property by will. Gen. Stats., chap. 113, secs. 2 and 4; Hickman v. Brown, 88 Ky., p. 377.

2. The Act of 1894, "Married Woman's Act," is not retrospective in its operation, and gave no power to Mrs. Johnson to destroy the marital rights of her husband in her property vested in him four years before the passage of this act. Mitchell v. Violett, 20 Ky. Law Rep., 378; Rose v. Rose, 20 Ky. Law Rep., 417.

3. If it be conceded that the Act of 1894 is retrospective in its effect, it does not confer upon Mrs. Johnson power to defeat her husband's marital rights by disposing of the property in controversy by will. Ky. Stat., chap. 66, art. 3; Smoot v. Heyser's Exor., &c., 23 Ky. Law Rep., 2401.

4. The question as to whether or not Mrs. Johnson's will effectually disposes of the property in controversy, is one of power. If the statute did not give her power to make such disposition, Colonel Johnson could not supply by consent thereto.

or otherwise this lack of power. Stewart on Husband and Wife, sec. 348; Hickman v. Brown, 88 Ky., 377.

5. Mrs. Johnson was not entitled to the property in controversy as an equitable settlement. Elliott v. Waring, 5 Mon., 343.

6. Colonel Johnson did not induce his wife to make this will. He practiced no fraud on her. If any fraud was practiced by the execution of this will, it was on the bank, and Mrs. Johnson was a party to it. Colonel Johnson is not, therefore, estopped to deny the validity of the will, nor is his creditor, the bank. Lewen on Trusts, p. 62; Stewart on Husband and Wife, sec. 348.

7. Of the property in controversy, $20,000 thereof is property in which Mrs. Johnson had a life estate, the remainder interest being vested in Col. Charles F. Johnson, her husband. Jarman on Wills, vol. 3, p. 705; Howard v. Howard, 4 Bush, 497; Jacob v. Jacob, 4 Bush, 413; Darnaby v. Darnaby, 14 Bush, 489.

8. Colonel Charles F. Johnson and Powhatan Wooldridge, the only witnesses who have testified in this case, are neither of them competent witnesses as to the principal matters about which they have testified. Bright's Exors. v. Swinebroad, 21 Ky. Law Rep., 369; Flood v. Pragoff, 79 Ky., 616; Civil Code, sec. 606; Hopkins' Admr. v. Faever, 86 Ky., 226; Hornsby v. Davidson, 21 Ky. Law Rep., 232; Commonwealth v. Sapp, 90 Ky., 585; Edelmuth v. Wybrant, 21 Ky. Law Rep., 930.

9. Section 15 of chapter 52 of the General Statutes is not applicable to the property in question, and Mrs. Johnson's heirs at law are not entitled to said property by virtue of that statute. Gen. Stats., chap. 52, sec. 15. The cases cited by counsel for the appellees are not in point. Kent's Admr. v. The Deposit Bank, 91 Ky., 79; Bank of Louisville v. Gray, 84 Ky., 565.

## POINTS AND AUTHORITIES FOR APPELLANTS ON CROSS-APPEAL OF MARY C. WOOLDRIDGE.

1. The court properly overruled the exceptions of Mary C. Wooldridge to the commissioner's report, thereby rejecting her claim against the estate of decedent, Mary L. Johnson, for $58,-674.25. Taylor on Evidence, sec. 567; authorities cited, clause 8, *supra*.

2. The court properly overruled the demurrer of Mary C. Wooldridge to the amended answer of the Louisville City National Bank, by which it pleaded the five years' statute of limitations as a bar to her claim. Ky. Stats., sec. 2515; Coffey v. Wilkerson, 1 Met., 103; Wood on Limitations, vol. 1, sec. 183; Roberts v. Roberts, 7 Bush, 103; Wood on Limitations, secs. 6, 13 to 16; Wood on Limitations, vol. 2, sec. 200, p. 504; Martin v. Leatty,

18 B. M., 573; Finley v. Patterson, 2 B. M., 76; Riggs v. Dooley, 7 B. M., 236; Boyce's Heirs v. Dudley, 8 B. M., 511; Clark v. Jones, 16 B. M., 121; Mitchell v. Berry, 1 Met., 602; Hull v. Deatty, 7 Bush, 687; Kendall v. Slaughter, 1 A. K. M., 375.

3. The court properly overruled the motion of Mary C. Wooldridge to strike from the file the answer and the exceptions of the Louisville City National Bank.

E. L. McDONALD and HUMPHREY, BURNETT & HUMPHREY, ATTORNEYS FOR MARY C. WOOLDRIDGE.

POINTS AND AUTHORITIES. ON APPEAL OF LOUISVILLE CITY NATIONAL BANK.

1. A surviving husband is a competent witness as to facts that came to his knowledge from statements of his wife, since deceased, which were not made by reason of the confidential relation existing between husband and wife. Sec. 606 of Code; Wise v. Foote, 81 Ky., 13; sec. 1 of Act of 1898; McGuire v. Maloney, 1 B. Mon., 225; Short v. Tinsley, 1 Met., 401; Sharpe v. Proctor, 1 Bush, 399; English v. Cropper, 8 Bush, 293; Booth's Exor. v. Vanarsdale, 9 Bush, 719; Storms v. Storms, 3 Bush, 79; Jones on Evidence, sec. 202; Greenleaf on Evidence, sec. 81.

2. Under the law as it existed prior to the Act of 1894, known as the Husband and Wife Act, a married woman had the power to make a will of her personal estate, with the consent of her husband, given at the time the will was made at the time of its probate. George v. Bussing, 15 B. Mon., 558; Hiram v. Griffiths, 8 Bush, 262; White v. Sale, 7 Ky. Law Rep., 570; Jarman on Wills, 30; General Statutes, chap. 52, sec. 15.

3. A married woman having stocks in Kentucky corporations. the certificates of which are in her own name and held by her as her separate estate, had power, prior to 1894, to dispose of same by will, with the consent of her husband. Gen. Stats., chap. 52, sec. 15; Kent's Admr. v. Deposit Bank of Owensboro, 91 Ky., 70; Bank of Louisville v. Gray, 84 Ky., 565.

4. Such rights as were given married women to make wills of their personal estate were not taken away by the Weissinger Act of 1894, above referred to, and since the passage of said act married women certainly have full power to dispose, by will, of their separate personal estate with the consent of their husbands. Ky. Stats., sec. 2147; Garner v. Wills, 92 Ky., 389; Gen. Stats., chap. 31, sec. 11; Kent's Admr. v. Deposit Bank, 91 Ky., 70, 78.

5. The husband has no vested rights in his wife's separate personal estate, during her lifetime, which could be affected by the

Weissinger Act, enlarging her powers of; disposing of the same by will. Mitchell v. Violett, 20 Ky. Law Rep., 378; Rose v. Rose, 20 Ky. Law Rep., 417; Cooley Const. Lien, 5th ed., p. 442; Am. & Eng. Ency of Law, vol. 24, p. 427.

6. A married woman possessed of separate personal estate, with full power to dispose of same in her lifetime, being induced by her husband's consent to make a disposition of it by will, so as to deprive him and his creditors of any interest in it, the husband and his creditors are estopped to deny the validity of such method of disposition. Pomeroy's, Eq. Juris., sec. 802; Strickland v. Aldridge, 9 Ves., 219; Lewin on Trusts, p. 62; Caldwell v. Caldwell, 7 Bush, 515.

7. A husband possessed of an estate of over $150,000, having accepted of his wife's property $10,375 upon the relinquishment of all claim, present or prospective, against her remaining estate, amounting to less than $50,000, is estopped, as are also his creditors, after his death, to claim any interest in such remaining estate as distributee or otherwise. Campbell v. Gailbreath, 12 Bush, 464; Thomas v. Harkness, 13 Bush, 23; White v. Sale, 7 Ky. Law Rep., 570; Ward v. Crotty, 4 Met., 60; Wilborn v. Ritter, 13 Ky. Law Rep., 122; Jones v. Nisbet, 12 Ky. Law Rep., 796; Bryant's Admr. v. Bryant, 3 Bush, 155; Green v. Green, 4 Ky. Law Rep., 250; Herman on Estoppel, sec. 1124; Darnaby v. Darnaby, 14 Bush, 489 (distinguished); Bowling v. Winslow, 5 B. Mon., 31; Watson v. Robertson, 4 Bush, 39; Elliott v. Waring, 5 Mon., 341.

8. A husband's consent to the will of his wife disposing of her separate estate constitutes no fraud on his creditors, since he does not thereby release or convey any interest vested in him. Garner v. Wills, 92 Ky., 386; Skinner's Appeal, 5 Barr (Pa.), 63; 45 Pa. Stats., 528; Dennison v. Nigh, 2 Watts (Pa.), 90; White v. Waite, 47 Vt., 502; Ky. Stats., sec. 1906; May on Fraudulent Conveyances, p. 17; Crozier v. Young, 3 Mon., 158; Jones v. Nisbet, 12 Ky. Law Rep., 796; Hendrick v. Peters, 10 Ky. Law Rep., 818; Bryant's Admr. v. Bryant, 3 Bush, 156; Bowling v. Winslow, 5 B. Mon., 29; White v. Sale, 7 Ky. Law Rep., 570.

9. A clear absolute bequest of personalty with full power of disposition is not defeated by a subsequent provision in the will, that upon the death of the legatee her husband shall be entitled to the bequest. Such language, if given any effect, refers to the death of the legatee, prior to that of the testatrix. Jarman on Wills, vol. 1, pp. 398-399 (2d Am. ed.); Wills v. Wills, 85 Ky., 538; Carpenter v. Hazelrigg, 103 Ky., 538; McCullough v. Anderson, 90 Ky., 126; Ball v. Hancock, 82 Ky., 107; Caleb v. Field,

9 Dana, 346; Biddle's Estate, 28 Pa. Stat., 59; Am. & Eng. Ency. of Law, vol. 29, p. 502.

## ON APPEAL OF MARY C. WOOLDRIDGE.

1. The estate of a life tenant who has received and converted the proceeds of real estate devised in trust, is liable to the remaindermen for the value of the estate so converted. Pomeroy's Eq. Juris., secs. 688, 1048; Perry on Trusts, sec. 828; Lathrop v. Bampton, 31 Cal. 17, 89 Am. Dec., 141; Edwards v. Taylor, 2 A. K. Mar., 148; Morrison v. Page, 9 Dana, 428; Cox v. Osbourne, 1 A. K. Mar., 311; Graham v. King, 96 Ky., 339; Bertram v. Ross, 23 Ky. Law Rep., 1927; Am. & Eng. Ency. of Law, vol. 27, p. 261; Pomeroy's Eq. Juris., 1058, 1080; Stephens v. Stephens, 89 Ky., 185; Woodring v. White, 12 Ky. Law Rep., 505.

2. The Statute of Limitations is not applicable in bar of the claim of such remaindermen for the value of the trust property against the estate of the life tenant until after the termination of such life estate. Lewin on Trusts, pp. 897, 900; Mays' Heirs v. Hill, 5 Littell, 309; Roberts v. Roberts, 7 Bush, 100; Lex. Life, &c., Ins. Co. v. Page, 17 Bush, 412, 446; Moore's Heirs v. Shepherd, 2 Duvall, 125; Ogden v. Walker's Heirs, 6 Dana, 422; Angell on Limitations, 474.

3. The life tenant can not hold adversely to the remainderman. Turman v. White, 14 B. M., 560; Simrall v. Graham, 1 Dana, 575; Kellar v. Stanley, 86 Ky., 240; Butler v. Carter, 5 L. R. Eq., 276.

4. A creditor of one alleged to be a distributee of the estate of a decedent, but who in fact has no interest in such estate, has no right or standing to interfere in a litigation between a creditor of the estate and the administrator, by filing an answer pleading limitations, excepting to depositions or otherwise. Code Prac., secs. 428, 429; McIntire v. McIntire, 82 Ky., 502; Hewitt, Auditor, v. Craig, 86 Ky., 23; Postal Telegraph Cable Co. v. Snowden, 68 Md., 118; Barbour v. Whitlock, 4 T. B. Mon., 180; Code, sec. 96, subsec. 3; 5 Ency. of Pl. & Pr., 640; May v. Armstrong, 3 J. J. ar., 260; Wells v. Boyd, 1 Dur., 366; Crabtree v. Banks, 1 Met., 482; Royse v. Reynolds, 10 Bush, 296.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—AFFIRMING.

On the 29th of March, 1898, the Louisville City National Bank brought a suit in equity against Charles F. Johnson, in which they allege that they had previously recovered a judgment against him for $11,979.10, with interest from the

13th of November, 1897, on which execution had issued directed to the sheriff, and which had been returned by him indorsed, "No property found out of which to make this *fi. fa.*, or any part thereof." The petition alleged that the defendant had in his possession, and in the possession of other persons whose names were unknown to the plaintiff, money and property which was liable for their debt, and asked that he be required to appear before the court for examination as to the whereabouts of his property, and that same be subjected to their demand. They at the same time sued out a general attachment against the property of the defendant. On the 3d day of June, 1898, and while the suit of the bank against Charles F. Johnson was still pending, the wife of the defendant, Mary Lawrence Johnson, died, leaving her husband and Mary C. Wooldridge, her only child and heir at law, the wife of Powhatan Wooldridge. The will of Mary Lawrence Johnson was duly probated in the Jefferson County Court on the 8th of June, 1898, with the consent of her husband, Charles F. Johnson, and is as follows:

"I, Mary Lawrence Johnson, do make this my last will and testament, revoking all others.

"In view of the fact that my daughter, Mary C. Wooldridge, will inherit a large estate left me by my father and mother, I bequeath to her the small sum of five hundred dollars. I make this explanation in the beginning, that my will may not be considered unjust and peculiar. I leave my daughter, Mary C. Wooldridge my carriage and horses, and the entire contents of my house during her life, at her death to be divided equally between my grandchildren. To each one of my four grandchildren, Powhatan Johnson Wooldridge, Annie Mary Wooldridge, Mary Tyler Wooldridge and Charles F. Wooldridge, I give and bequeath thirty shares of stock in the Columbia Finance and Trust Co. At the death of any one of

the four (being unmarried) his or her shares to go, to the surviving brothers and sisters. The remainder of everything that I possess, I leave as a sacred trust to my daughter Mary C. Wooldridge, knowing that she will faithfully carry out my wishes regarding it. I desire that no inventory shall be taken of my effects. Mary Lawrence Johnson.

"Witness: C. B. Seymour, Geo. D. Todd.

"I appoint my daughter Mary C. Wooldridge my executor without bond. Mary Lawrence Johnson."

Indorsed below the signature of Mrs. Johnson were these words:

"I consent to all my wife has written in her will. Charles F. Johnson."

Simultaneously with the execution of this will, Mrs. Johnson executed in writing a paper defining the sacred trust referred to in the will, which reads as follows:

"I want Chamie [Mrs. Mary C. Wooldridge] to keep two pews in Christ church as long as her father shall live just as I have done, and I want one of them kept in his name. I want her to give $100.00 to the Home of the Innocents in her father's name as long as he lives. I want her to use for her father's personal support such a part of the income from what I leave as in her judgment shall seem fit, but she shall be the sole judge as to how much or how little or whether any shall be applied in this way. I want her to care for my old servant, Ammie Wright, when she shall become unfit for work, either from age or infirmities. The balance of the income I want her to use for the education of my four grand-children. At the death of her father, I want the principal put in trust for my four grandchildren. Chamie may sell and re-invest any part of my estate as she may see fit."

Mrs. Johnson at her death owned and was in possession of, besides her household furniture and belongings, stocks in vari-

ous corporations, worth in the aggregate about $35,000 or $40,000. Mary C. Wooldridge declined to qualify as executrix of her mother's will, and her husband, Powhatan Wooldridge, was appointed administrator with the will annexed, and on the 17th of November, 1898, brought suit in the Jefferson Circuit Court against her heirs and creditors for the purpose of settling his accounts, and distributing the estate in accordance with the will of testatrix. Powhatan Wooldridge, after the institution, resigned as administrator with the will annexed, and J. W. E. Bailey was appointed in his place. Subsequently the defendants Mary C. and Powhatan Wooldridge filed an answer and counter-claim against the plaintiff Bailey as administrator *de bonis non* in which they allege that Robert Tyler, the father of Mary L. Johnson and grandfather of Mary C. Wooldridge, had died possessed of a large estate, which he disposed of by will, and that, after making certain specific devises to his wife, Mary L. Tyler, it proceeds as follows: "All the rest and residue of my estate, that is my real estate, I give and devise to my beloved wife, Mary L. Tyler, as trustee and in trust for each one of my daughters, share and share alike, and for their separate use during their lives, and after their deaths respectively then for such child or children as they may respectively leave with full power to my said wife at any time to sell any part of said real estate, and invest the proceeds in other real estate whenever she may think it best to do so; but any purchaser shall not be bound to see the money invested, and any property she may so purchase shall be held in trust as herein provided, and as to the balance of my estate, I give the same to my said daughters, share and share alike, forever." They state that prior to 1859 a partition was made of the real estate subject to the trust, situated in Jefferson county, and that there was allotted to Mary L. Tyler, as trustee for her

daughter Mary Lawrence Johnson, six separate lots and tracts of land, and that thereafter, at the request of Mary L. Johnson, all of these pieces of real estate were sold by the trustee, Mary L. Tyler, and the proceeds thereof turned over by her to Mary L. Johnson, and were by her appropriated to her own use, with full knowledge of the provisions of the will of Robert Tyler, deceased; that Mary C. Wooldridge was an infant under twenty-one years of age, and a married woman when the property was converted—and charge that the purchase money realized from the sale of this trust real estate aggregated $58,974, which she asserts as a claim against the estate of her mother. The answer also sets up other claims, aggregating $3,500, for money advanced for the use and accommodation of Mary L. Johnson during her life.

The Louisville City National Bank filed their answer in the settlement suit, which they made a counterclaim against the administrator, and a cross-petition against the Wooldridges and Charles F. Johnson, in which they controvert the claims asserted both by Mr. and Mrs. Wooldridge, on several grounds. First, they deny the alleged conversion by Mrs. Johnson of the trust estate devised by the will of Robert Tyler; second, they plead that the claim is stale, and barred by the lapse of time and statute of limitation; third, that even if the trust estate devised to Mary L. Johnson by her father Robert Tyler, had been lost, it was through the negligence of Mary L. Tyler, the testamentary trustee, and the cause of action was against her, and not against Mrs. Johnson, who was a married woman; and that Mary L. Tyler had in her will devised a large amount of property to Mrs. Wooldridge upon the condition that she should not call in question the manner in which she had discharged the duties imposed upon her as trustee by the will of her deceased husband with reference to the trust estate; and that Mrs. Wool-

dridge had accepted the provision made for her, and was estopped from questioning the manner in which the trust had been administered. They also allege that Charles F. Johnson was by law entitled, as tenant by the curtesy, to one-half of the surplus of his deceased wife's personal estate, and that, in addition to this interest which descended to him under the statute, he was by the tenth clause of the will of Mary L. Tyler entitled to have paid over to him from the estate of his deceased wife $20,000. The tenth clause in the will of Mary L. Tyler is as follows: "I give to each of my daughters, Mary Lawrence Johnson, Anna Eliza Bent, Alice Bacon, Fannie S. Bayley, and Roberta Tyler twenty thousand dollars for their sole and separate use and benefit to be forever free from the control, debts and marital rights of their present husband, and any either of them may ever have; and each of my said daughters shall have and is hereby given power and authority to dispose of the same by last will, or in any manner they may choose. But in the event that any one of all of my said daughters shall die before her or their present husband or husbands, the legacy given by this clause of my will to such daughter or daughters so dying shall pass to and vest absolutely in the surviving husband of such deceased daughter." They allege that Mrs. Johnson had no power, either under the statute which prevailed at the time she received the property disposed of, or at the time of her death, to make a will cutting out her husband, and charge that the will attempting to do so was the result of a fraudulent conspiracy in which she, her husband, and the Wooldridges had participated, for the purpose of defrauding the creditors of Charles F. Johnson, and ask that the interest of Charles F. Johnson in the personal estate devised by the wife be subjected to the payment of his debts. The Wooldridges replied to the answer and counterclaim, and alleged that their father, Charles F.

Johnson, had been paid $10,300 from the fund devised in the tenth clause of the will of Mary Tyler which had been accepted by him in full discharge of any rights or claims which he might have by virtue of the devise contained in the tenth clause of the will of Mrs. Tyler. They deny the alleged fraudulent conspiracy to cheat the creditors of Charles F. Johnson in the making of the will of Mary L. Johnson, or that she was not authorized to dispose of her personal estate. The pleadings were made up by rejoinder, surrejoinder, etc.; and upon final submission the trial court sustained the will of Mrs. Johnson, and held that neither her husband, Charles F. Johnson, nor the bank, as his creditor had any interest in or claim thereon and dismissed the claim of the bank, and the bank has appealed.

The record discloses that in 1856 Charles F. Johnson married Mary L. Tyler, the daughter of Robert Tyler; that after his death, in 1852, the real estate devised by Robert Tyler was partitioned between his devisees, and that before the death of his widow executrix and testamentary trustee, in 1891, she had sold and conveyed real estate which belonged to Mary L. Johnson during her lifetime and at her death to Mrs. Wooldridge, for which she realized $58,974.25, which fund was not re-invested by the trustee as provided in the will, but was turned over to Mrs. Johnson and her husband, Charles F. Johnson, who spent it. It appears that in 1890 Mrs. Tyler gave to her daughter Mrs. Johnson $100,000, $50,-000 of which was invested in real estate, and the remaining $50,000 in stocks in Mrs. Johnson's name, and which constituted the greater part of the personal estate owned by her at her death, and disposed of by her will. It is also shown that Mrs. Tyler died in 1891, leaving a large estate, which was devised to trustees for her children for life, with remainder over, exclusive of the $20,000 devised by the tenth clause

of the will, referred to above. It is shown by the testimony of both Charles F. Johnson and Mr. Wooldridge that $10,373 devised by the tenth clause of the will of Mrs. Tyler was paid over to Johnson under an agreement with his wife that it should be accepted in full of his interest in this fund.

The record presents many interesting legal questions, all of which, however, it will not be necessary for us to discuss. The first and most important one to be decided is whether Mrs. Johnson had the power, with her husband's consent, to make a valid disposition of that part of her personal estate to which he would have been entitled if she had died intestate. The right of a married woman to dispose of personal estate by will has often been the subject of inquiry at the hands of the courts. The common law with reference to this power is thus stated by Mr. Blackstone: "Among the Romans a married woman was as capable of bequeathing as a *feme sole*. But with us a married woman is not only incapable of devising lands, being excepted out of the statute of wills (34 and 35 Henry VIII, c. 5), but also she is incapable of making a testament of chattels without the license of her husband, for all her personal chattels are absolutely his. It would therefore be extremely inconsistent to give her a power of defeating that provision of the law by bequeathing those chattels to another. Yet by her husband's license she may make a testament, and the husband upon the marriage frequently covenants with her friends to allow her that license. But such license is more properly his assent, for, unless it be given to the particular will in question, it will not be a complete testament, even though the husband beforehand has given her permission to make a will. Yet it shall be sufficient to repel the husband from his joint right of administering his wife's effects, and administration shall be granted to her

appointee, with such testamentary paper annexed." See
Blackstone's Commentaries, 497 and 498.

It has been held in numerous decisions by the court in Eng-
land and the United States that the husband. could waive
his marital rights in the personal property of the wife by
consent to her will. In George v. Bussing, 54 Ky., 558, the
question of the power of the wife to make a valid disposition
by will of her personal estate and slaves was directly involved,
and this court, in a very carefully considered opinion by
Judge Simpson, said: "The doctrine is well settled that the
wife may dispose of her separate estate by will, and may
make a will in pursuance of a power given her for that pur-
pose. It is also settled doctrine that she may, with the con-
sent of her husband, make a will to dispose of her personal
estate. The principle upon which the power to make a will
in such a case rests is this. The husband may waive the
interest in her property which the law confers upon him,
and empower the wife to dispose of it by will. The grant of
such a power is implied from his consent that the will should
be made. A general assent that she may make a will is not
sufficient. It must be proved that he has consented to the
particular will which she has made, and his consent should be
given when it is proved. The reason for this is that he may
revoke his consent at any time during his wife's life, or after
her death, before probate." It was decided that the will of
the wife was valid with respect to her separate estate, and also
her personal property, but that it was ineffectual to dispose
of her slaves, or any personal property which belonged to the
husband at the time it was executed. When this decision was
rendered the Revised Statutes were in force, which gave
to the husband the entire personal estate left by the wife;
nor could a married woman dispose, under the statute, by the
will, of any estate not secured to her separate use by deed

or devise, or pursuant to a written power. The whole question turned upon the application of the common law to the facts of that case. So far as we are advised, the rule there announced has never been curtailed by statute or decision, and has been distinctly recognized in other cases in this State, and in numerous decisions of courts of other States. See Hiram v. Griffin, 71 Ky., 262; White v. Sale, 7 Ky. Law Rep., 570. The tendency of legislation on the subject has been in the opposite direction. Both by the Revised and General Statutes, a married woman was authorized to make a will disposing of estate secured to her separate use by deed or devise, and in the exercise of a written power. Section 15, c. 52, art. 4, General Statutes, provided that "if any stock in any bank or other corporations of this State is taken for or transferred to any *feme sole* and it is expressed on the certificate or transfer book that it is for the use of such *feme sole,* no husband of her should take any interest in such stock or in the dividends thereof, and that at her death it should pass to her heirs; and that she could dispose of it by will with the consent of her husband or without his consent if provided in the deed or will creating the trust." The act of 1894 (Acts 1894, p. 176, c. 76) still farther extends the power of married women, and converts all their personal property into separate estate, and confers upon her the power to dispose of her estate by last will and testament, subject to the provisions of the act. See Kentucky Statutes, 1899, section 2147.

We do not refer to these successive provisions of the statute for the purpose of resting thereon our conclusions that Mrs. Johnson had the power to dispose of her personal estate by will with the consent of her husband, because, in our opinion, the right existed at common law, but to show that it was

in no way changed or abridged by these various statutory provisions. During the life of Mrs. Johnson, her husband had no vested interest in the personal property disposed of by her. He could not have reduced it to possession without her consent, and she could have sold it, given it away, or disposed of it in any way she saw fit without his• consent. It is therefore hard for us to understand how he perpetrated a fraud upon his creditors when he consented that she should do by last will and testament what she had the undoubted right to do during her life. Section 1906, Kentucky Statutes, 1899, provides that "every gift, conveyance," etc., "of any estate with intent to delay, hinder and defraud shall be void as against such creditors." This statute refers to property owned by the debtor, and which his creditors had the right to subject. See Crozier v. Young, 19 Ky., 158. In Hickman v. Brown, 88 Ky., 377, 10 R., 952, 11 S. W., 199, the husband did not consent to the execution of the will, but contested its probate, and it came to this court on a verdict rejecting the will. There is no reference in the opinion in that case to George v. Bussing, Hiram v. Griffin, or White v. Sale, and no intimation that the court intended to depart from the well-established common-law doctrine, and it must therefore be considered as simply deciding the question which the court had before it. In Smoot v. Heyser's Executor, 113 Ky., 81, 23 R., 2401, 67 S. W., 21, there was no question of consent by the husband to the wife making a will involved; and the court in that case decided that under the act of 1894 the wife could not dispose of her property by will, without the consent of the husband, so as to deprive him of the interest in her property secured to him by the statute. We, therefore, conclude that Mrs. Johnson had the power, with the consent of her husband, properly evidenced, to dispose of her separate

personal estate by last will and testament, and that such con-
sent was no fraud upon his creditors.

The contention of the appellant that Charles F. Johnson
had a remainder interest in the devise of $20,000 made in
the tenth clause of the will of Mary Tyler to her daughter.
Mrs. Johnson appears unsound.   In this clause of her will
Mrs. Tyler gives to each of her daughters, for their separate
use and benefit, $20,000, free from the control, debts, and
marital rights of their husbands, with power and authority
to dispose of it by last will in any manner they may choose.
The section then provides that in the event any one of her
daughters should die before her, or their husbands, the legacy
given by this clause should pass to, and vest absolutely in,
the surviving husband of such deceased daughter.   In some-
what similar provisions in wills devising both real and per-
sonal estate this court has uniformly held that the bequest
in remainder only took effect in the event the first taker
should die before the testatrix.   This seems to be the only
possible construction which reconciles the first and last part
of the clause.   The principle is well stated in 1 Jarman on
Wills (2d Ed.) p. 398, where the author says: "Sometimes,
where an estate in fee is followed by apparently inconsistent
limitations, the whole has been reconciled by reading the
latter disposition as applying exclusively to the event of
the prior devisees in fee dying in the testator's lifetime; the
intention being, it is considered, to provide a substituted de-
vise in the case of lapse."   On page 399, the same author
says:   "It is clear, however, that words and passages in a
will which are irreconcilable with the general context may
be rejected, whatever may be the local position which they
happen to occupy, for the rule which gives effect to the pos-
terior of several inconsistent clauses must not be so applied

as in any degree to clash or interfere with the doctrine which teaches us to look for the intention of a testator in the general tenor of the instrument, and to sacrifice to the scheme of disposition, so disclosed any incongruous words and phrases which have found a place therein." The same doctrine is announced in Baxter, etc., v. Isaacs, etc., 24 R., 1618, 71 S. W., 907; Pool v. Benning, 48 Ky., 623; Thackston v. Watson, 84 Ky., 206, 8 R., 193, 1 S. W., 398; Duncan v. Kennedy, 72 Ky., 582; Ferguson v. Thomason, 87 Ky., 519, 10 R., 562, 9 S. W., 714; Wills v. Wills, 85 Ky., 486, 9 R., 76, 3 S. W., 900; Dickison v. Ogden's Executor, 89 Ky., 162, 11 R., 385, 12 S. W., 191; Pruitt v. Holland, 92 Ky., 641, 13 R., 867, 18 S. W., 852; Bank v. Ballard's Assignee, 83 Ky., 481, 7 R., 478, 4 Am. St. Rep., 160; Aultman v. Gibson's Guardian, 23 R., 2296, 67 S. W., 57.

It will be unnecessary for us to consider the alleged agreement by which Colonel Johnson received $10,327 of this bequest at the death of Mrs. Tyler in consideration of a full release by him of any claim to the residue at the death of his wife, or the competency of the testimony by which this agreement is attempted to be established, although we have no doubt that such an agreement could have been made by the parties, and, if properly evidenced, enforced. Our conclusions upon the question which we have considered make it unnecessary to extend this opinion, as there is no issue raised by the pleadings, except with the bank, and it is not important to it whether Mrs. Wooldridge takes the estate of her deceased mother as devisee or creditor.

For reasons indicated, the judgment is affirmed on original and cross appeals.